# United States Court of Appeals
## For the First Circuit

No. 17-1106

UNITED STATES OF AMERICA; STATE OF CALIFORNIA; STATE OF
COLORADO; STATE OF CONNECTICUT; STATE OF DELAWARE; DISTRICT OF
COLUMBIA; STATE OF FLORIDA; STATE OF GEORGIA; STATE OF HAWAII;
STATE OF ILLINOIS; STATE OF INDIANA; STATE OF IOWA; STATE OF
LOUISIANA; STATE OF MARYLAND; COMMONWEALTH OF MASSACHUSETTS;
STATE OF MICHIGAN; STATE OF MONTANA; STATE OF NEVADA; STATE OF
NEW JERSEY; STATE OF NEW MEXICO; STATE OF NEW YORK; STATE OF
NORTH CAROLINA; STATE OF OKLAHOMA; STATE OF RHODE ISLAND; STATE
OF TENNESSEE; STATE OF TEXAS; COMMONWEALTH OF VIRGINA; and STATE
OF WISCONSIN, ex rel. MARK MCGUIRE, WENDY JOHNSON, and
RYAN UEHLING,

Plaintiffs,

v.

MILLENIUM LABORATORIES, INC., MILLENIUM LABORATORIES OF
CALIFORNIA, INC.; JAMES SLATTERY; HOWARD APPEL,

Defendants.

---

MARK MCGUIRE,

Cross-Claimant, Appellant,

ESTATE OF ROBERT CUNNINGHAM; RYAN UEHLING; OMNI HEALTHCARE INC.;
AMADEO PESCE; JOHN DOE a/k/a CRAIG DELIGDISH,

Cross-Defendants, Appellees.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Nathaniel M. Gorton, U.S. District Judge]

---

Before

Torruella, Lynch, and Thompson,
Circuit Judges.

————————————

Michael Tabb, with whom Thomas M. Greene, Ryan P. Morrison, and Greene LLP were on brief, for appellant.
Michael B. Bogdanow, with whom Robert Foster and Meehan, Boyle, Black & Bogdanow, P.C. were on brief, for appellees.

————————————

May 6, 2019

————————————

**LYNCH**, **Circuit Judge**.  The False Claims Act (FCA), 31 U.S.C. § 3729 et seq., authorizes private persons, known as relators, to "bring a civil action . . . in the name of the Government" against those who make fraudulent claims against the United States, id. § 3730(b)(1).  When a relator brings such a qui tam suit, the government may intervene and proceed with the action, or it may decline to intervene and allow the relator to proceed.  See id. § 3730(b)(1)-(4), (c).

The FCA encourages relators to bring qui tam suits by allowing them to share in any recovery obtained for the government.  To avoid diluting this potential payout, the FCA's first-to-file rule prohibits relators other than the first to file from "bring[ing] a related action based on the facts underlying the pending action."  Id. § 3730(b)(5).

This case arises out of the government's successful intervention in several qui tam suits against Millennium Health (formerly Millennium Laboratories).  Millennium settled with the government for $227 million, setting aside fifteen percent of that money as a relator's share.  The question on appeal is who is the first-to-file relator and how that is determined.

Mark McGuire brought a crossclaim for declaratory judgment that he is the first to file and is entitled, under 31 U.S.C. § 3730(d)(1), to the fifteen-percent share.  Robert Cunningham, who had brought an earlier qui tam suit against

Millennium, moved to dismiss the crossclaim, arguing that he, not McGuire, was the first to file. Finding that the first-to-file rule was jurisdictional, and based on its review of extrinsic materials outside of the complaints, the district court agreed with Cunningham. United States ex rel. Cunningham v. Millennium Labs., Inc., 202 F. Supp. 3d 198, 209 (D. Mass. 2016). The district court dismissed McGuire's crossclaim for lack of subject-matter jurisdiction. Id.

We hold, for the first time in this circuit, that the first-to-file rule is not jurisdictional, reversing earlier circuit precedent, and we hold that we have jurisdiction over McGuire's crossclaim. We then describe the appropriate method for the first-to-file analysis and hold that McGuire was the first-to-file relator and that he has stated a claim that he is entitled to the relator's share of the settlement. We reverse and remand for further proceedings consistent with this opinion.

I.

A.  The False Claims Act

President Abraham Lincoln signed the FCA into law in 1863. It was originally intended "to combat rampant fraud in Civil War defense contracts." S. Rep. No. 99-345, at 8 (1986). Today, the FCA is the federal government's "primary litigative tool for combatting fraud." Id. at 2.

The FCA imposes liability on any person who "knowingly presents . . . a false or fraudulent claim for payment or approval," 31 U.S.C. § 3729(a)(1)(A), "to an officer, employee, or agent of the United States," id. § 3729(b)(2)(A)(i). A relator may enforce the FCA by bringing a civil qui tam action "in the name of the Government." Id. § 3730(b).

To bring such an action, the relator must file a complaint under seal and must serve the United States with a copy of the complaint and a disclosure of all material evidence. Id. § 3730(b)(2). After reviewing those materials, the United States may "proceed with the action, in which case the action shall be conducted by the Government." Id. § 3730(b)(4). Or, "[i]f the government does not exercise its right to intervene in the suit, the relator may serve the complaint upon the defendant and proceed with the action." United States ex rel. Karvelas v. Melrose-Wakefield Hosp., 360 F.3d 220, 225 (1st Cir. 2004), abrogated on other grounds by Allison Engine Co. v. United States ex rel. Sanders, 553 U.S. 662 (2008).

The FCA entitles the relator to a portion of any resulting judgment or settlement. Before the 1986 amendments to the FCA, the relator's share in a case in which the government had intervened was capped at "10 percent of the proceeds of the action or settlement of the claim." S. Rep. No. 99-345, at 41. The FCA now mandates a relator award in such a case of "at least 15 percent

but not more than 25 percent of the proceeds of the action or settlement of the claim, depending upon the extent to which the person substantially contributed to the prosecution of the action."[1]  31 U.S.C. § 3730(d)(1).

The 1986 amendments also added a significant restriction on recoveries in qui tam suits that is relevant here: the "first-to-file" rule in paragraph 3730(b)(5).  That paragraph provides, "When a person brings an action under [31 U.S.C. § 3730(b)], no person other than the Government may intervene or bring a related action based on the facts underlying the pending action."  Id. § 3730(b)(5).  Legislative history shows that this rule was meant to "clarify in the statute that private enforcement under the civil False Claims Act is not meant to produce class actions or multiple separate suits based on identical facts and circumstances."  S. Rep. No. 99-345, at 25.

B.   The Complaints

Because we hold that the first-to-file issue is to be addressed under Federal Rule of Civil Procedure 12(b)(6), not Rule 12(b)(1), we confine our review to the pleadings and to facts subject to judicial notice.  Haley v. City of Bos., 657 F.3d 39,

---

[1]   When the government declines to intervene and the relator successfully prosecutes the action, the relator may receive up to 30 percent of the payout (with the remainder to the United States).  31 U.S.C. § 3730(d)(2).  That is not the situation here.

- 6 -

46 (1st Cir. 2011). We limit our background discussion to facts alleged in Cunningham's amended complaint, McGuire's original complaint, and in the government's complaint in intervention and settlement agreement.[2]

### 1. Cunningham's Amended Complaint

In late 2009 and early 2010, relator Robert Cunningham[3] filed qui tam actions against five competitors of Calloway Laboratories, his employer. One competitor he sued was Millennium.

Cunningham filed his first amended complaint[4] against Millennium on February 24, 2011. It detailed a mechanism of fraud arising from Millennium's "Physician Billing Model," the key component of which was Millennium's "multi-class qualitative drug screen," which Cunningham's complaint labels a "test kit." The test kit was a urine specimen collection cup with chemical test

---

[2] Cunningham's amended complaint and McGuire's original complaint are subject to judicial notice. See Zucker v. Rodriguez, 919 F.3d 649, 651 n.5 (1st Cir. 2019) (citing E.I. Du Pont de Nemours & Co. v. Cullen, 791 F.2d 5, 7 (1st Cir. 1986) (Breyer, J.)). And the government's complaint in intervention and settlement agreement are also properly before us because McGuire attached them as exhibits to his crossclaim.

[3] Cunningham died in December 2010. His estate has continued to pursue his action. For simplicity, we refer to Cunningham and his estate as "Cunningham."

[4] Cunningham's amended complaint states, "This First Amended Complaint does not add any facts to those contained in the Original Complaint; rather, it removes some of the allegations that had been contained therein." The amended complaint's allegations were the only allegations "pending" when McGuire filed his suit.

strips embedded in it. This kit, which "c[ould] be purchased for less than" ten dollars, "use[d] a single specimen" collected at the point of care to detect "multiple drug classes."

We described the three aspects of Cunningham's allegations in United States ex rel. Estate of Cunningham v. Millennium Labs. of Calif., Inc., 713 F.3d 662, 665-66 (1st Cir. 2013). Cunningham's complaint alleged that Millennium used its inexpensive point-of-care test kits to induce physicians into excessive billing (Aspect One), excessive testing (Aspect Two), and excessive confirmatory testing (Aspect Three).[5] In Cunningham,

---

[5] We describe the first two aspects more fully. Aspect One: Cunningham alleged that Millennium told physicians that this test kit could "substantially increase his or her revenue." Because the kits performed several tests at once, Millennium told the physicians that they could "bill both government and private health insurance companies" for several drugs tests per kit. Under then-current government billing codes, the physicians should have only billed for one test per test kit. Cunningham alleged that a document distributed by Millennium "suggest[ed] each physician can bill at least 9 units per kit." And Cunningham alleged that Millennium separately informed physicians that they should bill "as many units as there are panels in the test kit." Cunningham alleged that, under this model, physicians could bill between $16.67 and $80 per unit and so extract per-kit revenues of between $173.18 to $432.

Aspect Two: Cunningham alleged that Millennium encouraged physicians to conduct excessive tests. Millennium informed physicians that, if they were to order twenty tests per day, they could earn up to $8,640 per day. The complaint stated that Millennium thus "encourage[d] the physician to order more testing than that physician would have prior to engaging in Millennium's [point-of-care] model, and increase[d] Millennium's market share by drawing other physicians to the practice with the hope and promise of greater revenues." It further alleged that participating physicians ordered "significantly more testing for their patients since entering the conspiracy than they did prior

we held that Aspects One and Three were jurisdictionally barred by the FCA's public disclosure provision, 31 U.S.C. § 3730(e)(4)(A), because they had been "publicly disclosed" in a California state defamation suit brought by Millennium against Calloway. 713 F.3d at 671. We then vacated the district court's order dismissing Aspect Two of Cunningham's claim and remanded that claim for further proceedings. Id. at 676. On remand, the district court dismissed Aspect Two of Cunningham's claim for lack of particularity under Federal Rule of Civil Procedure 9(b) and for failure to state a claim under Rule 12(b)(6). United States ex rel. Estate of Cunningham v. Millennium Labs. of Cal., No. 09-12209-RWZ, 2014 WL 309374, at *2 (D. Mass. Jan. 27, 2014). That decision is currently on appeal.

Only Aspect Three is potentially relevant to the first-to-file issue here.[6] Cunningham alleged that if the initial qualitative test uncovered any of the tested drugs, that test "w[ould] need to be followed up by a quantitative screen" and then

---

to participating in the conspiracy with Millennium." The alleged fraud consisted of Millennium's promotion of this billing model and physician defendants' misrepresentation of the medical need for the tests performed.

[6] McGuire argues, based on Campbell v. Redding Medical Center, 421 F.3d 817 (9th Cir. 2005), that because we found Aspect Three to be jurisdictionally barred, it does not count as a "pending" claim for first-to-file purposes. We do not address this argument because we find McGuire was the first-to-file relator even if we consider Aspect Three of Cunningham's complaint.

- 9 -

"confirmed by another method." The complaint alleges that Millennium's point-of-care model led to "significantly more testing," including "confirmatory tests."

Cunningham alleged generally that this scheme "increas[ed] the revenues of the [physician] defendants at the expense of the government and private health insurance programs" and "significantly increase[d] Millennium's revenues and market share." Cunningham's amended complaint never mentions the terms "custom profiles" or "standing orders" or describes any fraudulent schemes by Millennium associated with either.

Cunningham filed three disclosures of material evidence to the government in December 2009, September 2010, and February 2012, respectively.

2. McGuire's Original Complaint

Mark McGuire, appellant here, filed his original qui tam complaint on January 26, 2012. It focused not on point-of-care testing, the first stage of urinary drug testing, as Cunningham's complaint had done, but on confirmatory (or quantitative) testing, a later stage. McGuire alleged that after a point-of-care test discloses an unexpected drug (or shows the lack of an expected drug), a physician can order confirmatory tests. These tests, which require sophisticated equipment and so can be expensive, determine how much of the substance is present (or not).

McGuire alleged that Millennium engaged in a scheme that resulted in unnecessary <u>confirmatory</u> tests being performed and billed to the government after the point-of-care tests. Millennium persuaded physicians to execute "custom profiles," which are standing orders for a battery of confirmatory tests on <u>every</u> urine sample, regardless of whether the point-of-care testing showed a need. McGuire alleged that "even if [a point-of-care test] comes back completely negative, . . . based on the customized profile Millennium has gotten the physician's office to sign, Millennium runs 10 confirmatory tests." Millennium profited because "[t]hese 10 unnecessary tests are then billed to Medicare, Medicaid or other federal plans." And physicians and hospitals who signed up for "custom profiles" profited because they could bill the government for the unnecessary tests.

This scheme was, according to McGuire's complaint, a matter of corporate policy. McGuire alleged that Millennium supervisors required their sales representatives to aggressively market standing orders to physicians -- the representatives would return time and time again until the physicians executed custom profiles for <u>at least</u> ten confirmatory tests. Some physicians, with Millennium's participation, included up to twenty-five tests in their profiles.

McGuire also alleged that Millennium provided free point-of-care cups (test kits) to physicians to induce them to

send confirmation testing orders to Millennium. This tactic helped Millennium gain market share in a highly competitive and potentially quite lucrative business.

3. The Complaint and Settlement Agreement of the United States

In December 2014, the government announced its intention to intervene in McGuire's action (as well as the actions of three other relators, none of whom were Cunningham). It filed its complaint in intervention in those actions on March 19, 2015. The complaint describes two fraudulent schemes: (1) Millennium's submission of claims for excessive and unnecessary urine drug testing ordered by physicians through standing orders without an individualized assessment of patient need; and (2) urine drug testing referred by physicians who received free point-of-care testing supplies, in violation of the Stark Act and the Anti-Kickback Statute. Millennium used these schemes to "knowingly submit[] many millions of dollars' worth of false claims" to the government.

The United States complaint in intervention alleges that "[a] core element of Millennium's business model was the use of physician standing order forms." These standing orders led to unnecessary drug tests conducted "regardless of each patient's individualized need and condition." Millennium required physicians to use these forms or be cut off from processing

specimens, set and enforced testing thresholds for standing orders, and promoted routine confirmatory testing of even negative point-of-care test results. This standing order practice generated unnecessary testing, including confirmatory testing for rarely abused drugs, even when point-of-care test results showed no need for follow-up testing.

The government's complaint also alleged that Millennium engaged in an illegal kickback scheme involving point-of-care cups. After the Center for Medicare and Medicaid Services (CMS) changed the reimbursement structure for point-of-care cups effective April 2010, "the [point-of-care] test cups were no longer a source of significant reimbursement revenue for physicians." In response, Millennium "dramatically" expanded its "Free Cup program." Under this program, Millennium distributed $5 million worth of point-of-care test cups for free to physicians in exchange for "referrals" to Millennium. A physician "refers" a test by sending a sample for confirmatory testing. The government alleged that this program violated the Stark Law and the Anti-Kickback Statute, which require point-of-care test cups to be sold at fair market value.

On October 16, 2015, the government and Millennium reached a settlement under which Millennium agreed to pay $227 million plus interest to resolve these claims. The settlement set aside fifteen percent of the recovery as a relator's share, but

did not resolve which relator was entitled to the award.[7]  The agreement provided that the district court "shall retain jurisdiction as to . . . [r]elators' claims for a share of the proceeds of the Settlement Amount."  The district court dismissed only the relators' claims against Millennium on March 24, 2016 and stated that the "[r]elators' respective claims, between and among themselves, for a portion of the agreed-upon 'relator share' of the Settlement Amount . . . are not dismissed and will remain pending."

C.   Post-Settlement Procedural History

On October 23, 2015, McGuire filed a crossclaim for declaratory relief, asserting that he was the first to file a complaint that alleged the essential facts underlying the government's complaint in intervention and settlement agreement. He argued that he was entitled to the entire fifteen-percent relator's share because he was the first-to-file relator.[8]  On December 7, 2015, Cunningham moved to dismiss McGuire's crossclaim, arguing that he, not McGuire, was the first to file.

---

[7]    The settlement also preserved the relators' rights to seek reasonable costs and attorney's fees and expenses under 31 U.S.C. § 3730(d)(2) and preserved some relators' employment-retaliation claims.

[8]    McGuire brought this crossclaim against Cunningham and several other relators but not against Wendy Johnson, Allstate Insurance Co., and Lawrence Spitz -- McGuire reports that he "reached an agreement" with this last group.  The cross-defendants other than Cunningham have conceded that they filed behind McGuire.

- 14 -

The government took no position on this issue. It did, however, urge the district court to confine its first-to-file analysis to "the text of the complaints themselves, and not on any subsequent investigation by the United States of such complaints or any related communications."

On August 19, 2016, the district issued its order dismissing McGuire's crossclaim. Cunningham, 202 F. Supp. 3d at 209. The district court held, relying on this circuit's precedent, that the first-to-file rule was jurisdictional and that Cunningham's motion to dismiss was a factual challenge to the court's jurisdiction. Id. at 205-06. The district court looked beyond the complaints to extrinsic evidence and concluded that the first-to-file rule applied and barred McGuire's crossclaim. Id. at 206. The district court dismissed the crossclaim for lack of subject-matter jurisdiction. Id. at 209. The order entered on the docket three days later, on August 22, 2016.[9]

McGuire moved for reconsideration of the order dismissing his crossclaim. The district court denied that motion. This appeal followed.

---

[9] There was no "separate document," Fed. R. Civ. P. 58(c)(2)(A), accompanying that order, so judgment entered 150 days later, on January 19, 2017. McGuire had 30 days from then to file his notice of appeal. McGuire's January 20, 2017 filing was timely. Cunningham's arguments to the contrary are meritless.

- 15 -

II.

A federal appellate court normally must "satisfy itself both of its own subject-matter jurisdiction and of the subject-matter jurisdiction of the trial court before proceeding further." Royal Siam Corp. v. Chertoff, 484 F.3d 139, 143 (1st Cir. 2007) (citing Bender v. Williamsport Area Sch. Dist., 475 U.S. 534, 541 (1986); Irving v. United States, 162 F.3d 154, 160 (1st Cir. 1998) (en banc)). We consider whether the first-to-file rule is jurisdictional under the Supreme Court's most recent caselaw. On de novo review, and in light of that precedent, we hold that the first-to-file rule, 31 U.S.C. § 3730(b)(5), is nonjurisdictional and that we have jurisdiction over McGuire's crossclaim.[10]

"Characterizing a rule as jurisdictional renders it unique in our adversarial system." Sebelius v. Auburn Reg'l Med. Ctr., 568 U.S. 145, 153 (2013). A jurisdictional objection may be raised at any time, even after trial. And a trial court without jurisdiction lacks "all authority to hear a case."[11] United States v. Kwai Fun Wong, 135 S. Ct. 1625, 1631 (2015).

---

[10] McGuire argues that the district court erred in holding that his crossclaim for declaratory judgment under paragraph 3730(d)(1) is subject to the first-to-file rule. Cunningham, 202 F. Supp. 3d at 203. We need not reach this argument because even if the first-to-file rule does not apply to McGuire's crossclaim, it applies to his underlying action against Millennium. And because that action eventually gave rise to McGuire's crossclaim, we must assure ourselves of the district court's jurisdiction.

[11] So even in a case like this one, in which seven years have passed since McGuire first filed his complaint, a

- 16 -

The Supreme Court has attempted to "ward off profligate use of the term 'jurisdiction.'" Auburn Reg'l Med. Ctr., 568 U.S. at 153. As such, it has held that we must apply a "readily administrable bright line" rule and see if Congress has "clearly state[d]" that the provision under review is jurisdictional. Arbaugh v. Y&H Corp., 546 U.S. 500, 515 (2006).

In considering this issue, we do not write on a clean slate. As the district court quite properly noted, this court has several times characterized the first-to-file rule as jurisdictional. See United States ex rel. Wilson v. Bristol-Myers Squibb, Inc., 750 F.3d 111, 117 (1st Cir. 2014); United States ex rel. Heineman-Guta v. Guidant Corp., 718 F.3d 28, 34 (1st Cir. 2013); United States ex rel. Duxbury v. Ortho Biotech Prods., L.P., 579 F.3d 13, 16, 33 (1st Cir. 2009).

While we are "ordinarily 'constrained by prior panel decisions directly (or even closely) on point,'" we are not so bound when "non-controlling authority that postdates the decision . . . offer[s] 'a compelling reason for believing that the former panel, in light of new developments, would change its collective mind." Sánchez ex rel. D.R.-S. v. United States, 671 F.3d 86, 96 (1st Cir. 2012) (quoting United States v. Guzmán, 419 F.3d 27, 31

jurisdictional objection may result in dismissal. And that could mean "many months of work on the part of the attorneys and the court may be wasted." Henderson ex rel. Henderson v. Shinseki, 562 U.S. 428, 435 (2011).

(1st Cir. 2005)).  There are several compelling reasons for such a belief here.

First, new developments cast serious doubt on our prior characterization of the first-to-file rule as jurisdictional.  In 2015, the Supreme Court decided Kellogg Brown & Root Services, Inc. v. United States ex rel. Carter, 135 S. Ct. 1970 (2015), a qui tam case.  Carter "addressed the operation of the first-to-file bar on decidedly nonjurisdictional terms, raising the issue after it decided a nonjurisdictional statute of limitations issue."  United States ex rel. Heath v. AT & T, Inc., 791 F.3d 112, 121 n.4 (D.C. Cir. 2015).  The clear implication is that the Court did not consider the first-to-file rule to be jurisdictional.  Interpreting Carter, the D.C. Circuit and the Second Circuit have both held that the first-to-file rule is nonjurisdictional.[12]  See United States ex rel. Hayes v. Allstate Ins. Co., 853 F.3d 80, 85 (2d Cir. 2017); Heath, 791 F.3d at 120-21.

This court has twice declined to reach the issue of whether the first-to-file rule is jurisdictional when it was not necessary to resolution of the appeal, while recognizing that Carter affects the analysis.  See United States ex rel. Kelly v. Novartis Pharm. Corp., 827 F.3d 5, 12 n.9 (1st Cir. 2016) ("We

---

[12]  The Fourth Circuit has, after Carter, based on circuit precedent, maintained that the first-to-file rule is jurisdictional.  See United States ex rel. Carter v. Halliburton Co., 866 F.3d 199, 203 n.1 (4th Cir. 2017).

- 18 -

assume, but need not decide, that the first-to-file bar remains jurisdictional. This position is not without doubt."); United States ex rel. Gadbois v. PharMerica Corp., 809 F.3d 1, 6 n.2 (1st Cir. 2015) ("[W]e have no need to consider the relator's back-up argument that the first-to-file bar is not jurisdictional in light of Carter.").

Second, this circuit's prior cases labeling the first-to-file rule as jurisdictional, all of which predate Carter, devoted no substantive analysis to this issue. Duxbury, the oldest case, listed the first-to-file rule among the FCA's "jurisdictional bars" only in passing as dicta. 579 F.3d at 16. But it did not ask, and no later First Circuit decision has asked, if Congress clearly stated that the first-to-file rule was jurisdictional. Because these rulings failed to apply the Arbaugh clear-statement test, they should be "accorded 'no precedential effect' on the question whether the federal court had authority to adjudicate the claim in suit." Arbaugh, 546 U.S. at 511 (quoting Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 91 (1998)).

And third, applying the bright line rule leads to only one conclusion: the first-to-file rule is nonjurisdictional. Neither statutory text nor context nor legislative history suggests otherwise. See Kwai Fun Wong, 135 S. Ct. at 1632-33 (looking to text, context, and legislative history to determine whether a statutory provision was jurisdictional).

As always in matters of statutory interpretation, we start with the text.  United States v. Musso, 914 F.3d 26, 30 (1st Cir. 2019).  Paragraph 3730(b)(5) provides that "no person other than the Government may intervene or bring a related action based on the facts underlying the pending action."  31 U.S.C. § 3730(b)(5).  As the D.C. Circuit recognized, this "language 'does not speak in jurisdictional terms or refer in any way to the jurisdiction of the district courts.'"  Heath, 791 F.3d at 120 (quoting Arbaugh, 546 U.S. at 515).

We next look to context.  Paragraph 3730(b)(5) does not speak in jurisdictional terms; nearby provisions, by contrast, explicitly do so.  Cf. Musso, 914 F.3d at 31 (drawing a negative inference from word choices made in neighboring statutory text).  For instance, paragraph 3730(e)(1) provides, "No court shall have jurisdiction over an action brought by a former or present member of the armed forces . . . against a member of the armed forces arising out of such person's service in the armed forces."  31 U.S.C. § 3730(e)(1).  And paragraph 3730(e)(2) states, "No court shall have jurisdiction over an action brought . . . against a Member of Congress, a member of the judiciary, or a senior executive branch official if the action is based on evidence or information known to the Government when the action was brought."  Id. § 3730(e)(2).  So, as the D.C. Circuit recognized, "[w]hen Congress wanted limitations on False Claims Act suits to operate

- 20 -

with jurisdictional force, it said so explicitly." Heath, 791 F.3d at 120.

And finally, as a check to confirm the accuracy of our textual analysis, we turn to legislative history. See Kwai Fun Wong, 135 S. Ct. at 1633 ("[E]ven assuming legislative history alone could provide a clear statement (which we doubt), none does so here."). Congress added the first-to-file rule when it amended the FCA in 1986. The Senate Report states that the purpose of the first-to-file rule was to clarify that "only the Government may intervene in a qui tam action" and that "private enforcement under the civil False Claims Act is not meant to produce class actions or multiple separate suits based on identical facts and circumstances." S. Rep. No. 99-345, at 25. The first-to-file rule advances this goal even when the provision is not jurisdictional.

Finding Congress had made no clear statement that the rule was jurisdictional, the D.C. Circuit held that "the first-to-file rule bears only on whether a qui tam plaintiff has properly stated a claim." Heath, 791 F.3d at 121. The Second Circuit, relying heavily on Heath, reached the same conclusion. Hayes, 853 F.3d at 85-86. Given Carter, Heath, Hayes, and the Supreme Court's clear statement rule, there is a compelling reason to believe that prior panels would no longer view the first-to-file rule as

jurisdictional.  For the same reasons, we now hold that the first-to-file rule is not jurisdictional.

Because the first-to-file rule is not jurisdictional, the district court had subject-matter jurisdiction over McGuire's claim against Millennium.  The district court also had subject-matter jurisdiction over McGuire's crossclaim under 28 U.S.C. §§ 1331 and 2201.  And we have jurisdiction under 28 U.S.C. § 1291.

### III.

The remaining question is whether, under 31 U.S.C. § 3730(d)(1), McGuire is entitled to the relator's share of the government's settlement with Millennium.[13]  In assessing this question, we confine our review to the pleadings and to "facts susceptible to judicial notice."[14]  Haley, 657 F.3d at 46.

As we demonstrate below, the crucial component of this question, as framed in this case, is whether McGuire was the first-to-file relator.  Rather than remand, we address the first-to-file

---

[13]    The district court purported to deny Cunningham's 12(b)(6) motion, but only after granting his 12(b)(1) motion.  We have noted that "if the court lacks subject matter jurisdiction, assessment of the merits becomes a matter of purely academic interest."  Deniz v. Mun. of Guaynabo, 285 F.3d 142, 150 (1st Cir. 2002).  Deciding a Rule 12(b)(6) motion after finding no subject-matter jurisdiction is "gratuitous."  Id. at 149.

[14]    The district court analyzed Cunningham's motion to dismiss as a factual challenge under Rule 12(b)(1) and so engaged its "broad authority" to look outside the pleadings "to determine its own jurisdiction."  Valentin v. Hosp. Bella Vista, 254 F.3d 358, 363 (1st Cir. 2001).

issue as a matter of law because it has been fully briefed, because neither party suggests that the issue requires remand, and because the basic facts are uncontested. See G. & C. Merriam Co. v. Webster Dictionary Co., 639 F.2d 29, 40 (1st Cir. 1980); see also Levy v. Lexington Cty., S.C., 589 F.3d 708, 716 (4th Cir. 2009); LNC Invs., Inc. v. First Fid. Bank, N.A. N.J., 173 F.3d 454, 464 (2d Cir. 1999).

Subsection 3730(d), entitled "Award to qui tam plaintiff," provides in relevant part:

> If the Government proceeds with an action brought by a person under subsection (b), such person shall, subject to the second sentence of this paragraph, receive at least 15 percent but not more than 25 percent of the proceeds of the action or settlement of the claim, depending upon the extent to which the person substantially contributed to the prosecution of the action.

31 U.S.C. § 3730(d)(1). We look to whether the government's recovery from Millennium constitutes the "proceeds of the . . . settlement of the claim" McGuire brought. See Rille v. PricewaterhouseCoopers LLP, 803 F.3d 368, 373 (8th Cir. 2015) (en banc) ("[A] relator seeking recovery must establish that 'there exists [an] overlap between Relator's allegations and the conduct discussed in the settlement agreement.'" (quoting United States ex rel. Bledsoe v. Cmty. Health Sys., Inc., 342 F.3d 634, 651 (6th Cir. 2003))).

To be entitled to the relator's share under paragraph 3730(d)(1), a relator must be a person who "br[ings]" "an action under . . . subsection [3730(b)]." 31 U.S.C. § 3730(d)(1); Rille, 803 F.3d at 372 ("The relators' right to recovery is limited to a share of the settlement of the claim that they brought."). The first-to-file rule bars any "person other than the Government" from "bring[ing] a related action based on the facts underlying the pending action." 31 U.S.C. § 3730(b)(5). So only the first-to-file relator can claim the relator's share of the settlement proceedings for each claim.

Nearly all courts share this conclusion. See United States ex rel. Shea v. Cellco P'ship, 863 F.3d 923, 927 (D.C. Cir. 2017) ("The first-to-file bar thereby ensures only one relator will share in the government's recovery . . . ."); United States ex rel. LaCorte v. SmithKline Beecham Clinical Labs., Inc., 149 F.3d 227, 231 (3d Cir. 1998) ("[N]o qui tam plaintiff may . . . share in a government settlement if his or her allegations repeat claims in a previously filed action."); see also United States ex rel. Merena v. SmithKline Beecham Corp., 205 F.3d 97, 103-06 (3d Cir. 2000) (Alito, J.) (concluding "that a relator whose claim is subject to dismissal under [the public-disclosure rule in 31 U.S.C. §] 3730(e)(4) may not receive any share of the proceeds

attributable to that claim," id. at 106); Fed. Recovery Servs., Inc. v. United States, 72 F.3d 447, 450 (5th Cir. 1995).[15]

This conclusion also aligns with the policies underlying the first-to-file rule. The rule is "part of the larger balancing act of the FCA's qui tam provision, which 'attempts to reconcile two conflicting goals, specifically, preventing opportunistic suits, on the one hand, while encouraging citizens to act as whistleblowers, on the other.'" Wilson, 750 F.3d at 117 (quoting LaCorte, 149 F.3d at 233). "The first-to-file bar operates on the recognition that, because relators can bring suit without having suffered a personal injury, countless plaintiffs in theory could file a qui tam action based on the same fraud and then share in the proceeds." Shea, 863 F.3d at 927. Allowing a follow-on filer to siphon off the first-filed suit's proceeds "weaken[s] the incentive to dig out the facts and launch the initial action." United States ex rel. Chovanec v. Apria Healthcare Grp. Inc., 606 F.3d 361, 364 (7th Cir. 2010).

To resolve the first-to-file issue here, we ask whether Cunningham's amended complaint "contained 'all the essential

_____

[15]     See also United States ex rel. Dhillon v. Endo Pharm., 617 F. App'x 208 (3d Cir. 2015) (unpublished) (summarily affirming the district court's finding that only the first-to-file relator was entitled to the relator's share of a settlement). But see United States ex rel. Doghramji v. Cmty. Health Sys., Inc., 666 F. App'x 410, 418 (6th Cir. 2016) (rejecting this conclusion).

facts'" of the fraud McGuire alleged.[16] United States ex rel. Ven-A-Care of the Fla. Keys, Inc. v. Baxter Healthcare Corp., 772 F.3d 932, 938 (1st Cir. 2014) (quoting Heineman-Guta, 718 F.3d at 34). While this "essential facts" standard does not require "identity between the two complaints to trigger the first-to-file rule," id., the rule still may bar a different "claim even if that claim incorporates somewhat different details," id. (quoting Wilson, 750 F.3d at 118). The essential facts test "presents a question of law about the statutorily required threshold for notifying the government of the fraud alleged in the later-filed suit." Id. Our review is de novo.[17] Id.

We apply the essential facts test by comparing Cunningham's amended complaint and McGuire's original complaint. See Heath, 791 F.3d at 121 ("Similarity is assessed by comparing

---

[16] Other circuits, such as the D.C. Circuit, preclude recovery from not-first-to-file relators when the first-filed complaint alleges the "material elements of fraud" at issue and "equip[s] the government to investigate" that fraud. United States ex rel. Batiste v. SLM Corp., 659 F.3d 1204, 1209 (D.C. Cir. 2011). For purposes of this case, we see no difference between this standard and the essential facts test.

[17] Cunningham argues that the settlement independently reserved this issue for the district court to resolve as a matter of fact, and that we must accept the district court's findings. The premise is wrong -- the settlement says nothing of the sort. It states only that the district court "retain[ed] jurisdiction" over this issue, and that the relators "reserve[d] their rights against Millennium to seek attorneys' fees, costs and expenses" under applicable provisions. It does not displace normal first-to-file law.

the complaints side-by-side . . . ."); Ven-A-Care, 772 F.3d at 938 ("[W]e compare the Ven-A-Care complaint to the Sun and Hamilton complaint."); In re Nat. Gas Royalties Qui Tam Litig. (CO2 Appeals), 566 F.3d 956, 964 (10th Cir. 2009) ("The first-to-file bar is designed to be quickly and easily determinable, simply requiring a side-by-side comparison of the complaints."). First-to-file analysis is limited to the four corners of the relevant complaints. See Duxbury, 579 F.3d at 33-34 (refusing to consider allegations in a later-filed Information because the relator "had his opportunity to [include those allegations] when he filed [his] Original Complaint"). We conclude, based on those two complaints, that Cunningham and McGuire do not allege similar frauds, but allege different frauds with different mechanisms.

We proceed claim-by-claim. Merena, 205 F.3d at 102 ("[T]he court must conduct a claim-by-claim analysis in order to determine if section 3730(b)(5) applies."). Two claims of fraud are relevant here: (1) Millennium's custom profile fraud, and (2) Millennium's point-of-care cup kickback scheme. Cunningham's complaint lacks all the essential elements of both claims.

Cunningham argues that he was the first to file a claim against Millennium for excessive and unnecessary drug testing. But this is too general an argument. We must look to the actual mechanism (the "essential facts") of the fraud that Cunningham alleged. In his amended complaint, Cunningham alleged that

- 27 -

Millennium's Physician Billing Model, which involved physicians billing the government for multiple tests for each point-of-care cup, led to "significantly more testing." And he alleged that this increased point-of-care testing led, in turn, to more "confirmatory tests." But CMS revised its reimbursement rules to defeat such fraud, so physicians can no longer bill for multiple tests from a single cup. And Cunningham's amended complaint never mentions "standing orders" or "custom profiles," as McGuire's does.

Cunningham's allegations do not cover the essential elements of the fraud that McGuire described in his original complaint. McGuire alleged that Millennium required physicians to execute custom profiles. And McGuire alleged that these profiles directed Millennium to automatically conduct a battery of confirmatory tests regardless of individual patient need and regardless of what the point-of-care test showed. The fraud McGuire alleged had a different mechanism (the custom profiles) and focused on a different stage of testing (the confirmatory stage) than the one Cunningham described. McGuire was the first relator to file a claim including the essential elements of Millennium's custom profile fraud, which the government then pursued.

Cunningham also argues that he alleged the essential elements of Millennium's point-of-care cup kickback scheme, the

second scheme the government pursued. He says he "alleged Millennium provided test kits at a nominal cost, and encouraged doctors to bill for numerous tests rather than for just one multi-panel test." But Cunningham's amended complaint makes only one mention of cost: it says that the point-of-care cups "can be purchased for less than $10.00." Cunningham did not allege that this was less than fair market value. And he did not allege that Millennium provided the cups for free in exchange for physicians referring confirmatory testing. McGuire, by contrast, alleged that Millennium provided point-of-care cups, "a valuable diagnostic tool," to physicians <u>for free</u> to induce them to send confirmation testing orders to Millennium.

Again, Cunningham's allegations do not include the essential elements of the fraud McGuire alleged. Further, the fraud the government pursued was that alleged by McGuire.[18] The government alleged that Millennium distributed $5 million worth of free point-of-care test cups in exchange for the doctors referring the cups to Millennium for confirmatory testing. This was an illegal kickback because, "absent an applicable statutory

---

[18] McGuire attached the government's complaint in intervention to his crossclaim, so it is properly before us. In any event, the government's complaint would be subject to judicial notice. See <u>Zucker</u>, 919 F.3d at 651 n.5 (citing <u>E.I. Du Pont de Nemours & Co.</u>, 791 F.2d at 7 (Breyer, J.)).

exception[, point-of-care] cups had to be sold at 'fair market value' to comply with the Stark Law and Anti-Kickback Statute."

The district court erred when it found that "Cunningham's materials provided the government with 'sufficient notice to initiate an investigation into [Millennium's] allegedly fraudulent practices.'" Cunningham, 202 F. Supp. 3d at 206 (quoting Ven-A-Care, 772 F.3d at 938). Mere notice -- particularly of a different fraud than the government chose to pursue -- is not enough. As we made clear in Ven-A-Care, "we must ask not merely whether the first-filed complaint provides some evidence from which an astute government official could arguably have been put on notice, but also whether the first complaint contained all the essential facts of the fraud it alleges." 772 F.3d at 938 (emphasis added) (internal citation and quotation marks omitted).

McGuire has established that he was the first to file a claim alleging the essential facts of Millennium's custom profile fraud and point-of-care cup kickback scheme. He has also adequately pleaded that the government's recovery from Millennium constitutes the "proceeds of the . . . settlement of the claim[s]" he brought.[19] 31 U.S.C. § 3730(d)(1).

_____

[19] There is no assertion by the government or anyone else that McGuire did not plead the conduct that formed the basis of the claims the government ultimately settled. We need not address the issue decided by the Eighth Circuit in Rille. See 803 F.3d at 374 (remanding for further factual development in a case in which "[t]he government objected to [the relators'] recovery on the

IV.

We reverse[20] and remand for further proceedings consistent with this opinion.

---

ground that the relators' complaint did not plead the conduct that formed the basis of the claims that the government ultimately settled," id. at 371).

[20] Our holding moots McGuire's appeal of the district court's denial of his motion to reconsider.