# United States Court of Appeals
## For the First Circuit

No. 22-1245

UNITED STATES, ex rel. CHERYL LOVELL and WILLIAM MCKUSICK,

Plaintiffs, Appellants,

UNITED STATES, ex rel. GEORDIE SANBORN; STATE OF VERMONT, STATE OF CALIFORNIA, STATE OF COLORADO, STATE OF DELAWARE, STATE OF FLORIDA, STATE OF GEORGIA, STATE OF HAWAII, STATE OF ILLINOIS, STATE OF INDIANA, STATE OF IOWA, STATE OF MARYLAND, COMMONWEALTH OF MASSACHUSETTS, STATE OF MICHIGAN, STATE OF MINNESOTA, STATE OF MONTANA, STATE OF NEVADA, STATE OF NEW JERSEY, STATE OF NEW YORK, STATE OF NORTH CAROLINA, STATE OF OKLAHOMA, STATE OF RHODE ISLAND, STATE OF TEXAS, STATE OF WISCONSIN, DISTRICT OF COLUMBIA, COMMONWEALTH OF VIRGINIA, STATE OF NEW MEXICO, STATE OF TENNESSEE, STATE OF WASHINGTON, STATE OF CONNECTICUT, STATE OF LOUISIANA, ex rel. CHERYL LOVELL AND WILLIAM MCKUSICK,

Plaintiffs,

v.

ATHENAHEALTH, INC.,

Defendant, Appellee,

JOHN DOES 1-10,

Defendants.

No. 22-1246

UNITED STATES, ex rel. GEORDIE SANBORN,

Plaintiff, Appellant,

UNITED STATES, ex rel. CHERYL LOVELL and WILLIAM MCKUSICK; STATE OF VERMONT, STATE OF CALIFORNIA, STATE OF COLORADO, STATE OF DELAWARE, STATE OF FLORIDA, STATE OF GEORGIA, STATE OF HAWAII,

STATE OF ILLINOIS, STATE OF INDIANA, STATE OF IOWA, STATE OF MARYLAND, COMMONWEALTH OF MASSACHUSETTS, STATE OF MICHIGAN, STATE OF MINNESOTA, STATE OF MONTANA, STATE OF NEVADA, STATE OF NEW JERSEY, STATE OF NEW YORK, STATE OF NORTH CAROLINA, STATE OF OKLAHOMA, STATE OF RHODE ISLAND, STATE OF TEXAS, STATE OF WISCONSIN, DISTRICT OF COLUMBIA, COMMONWEALTH OF VIRGINIA, STATE OF NEW MEXICO, STATE OF TENNESSEE, STATE OF WASHINGTON, STATE OF CONNECTICUT, STATE OF LOUISIANA, ex rel. CHERYL LOVELL AND WILLIAM MCKUSICK,

Plaintiffs,

v.

ATHENAHEALTH, INC.,

Defendant, Appellee,

JOHN DOES 1-10,

Defendants.

---

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Nathaniel M. Gorton, U.S. District Judge]

---

Before

Barron, Chief Judge,
Lynch and Gelpí, Circuit Judges.

---

Hyland Hunt, with whom Ruthanne M. Deutsch, Deutsch Hunt PLLC, Suzanne E. Durrell, and Whistleblower Law Collaborative LLC were on brief, for appellants Lovell and McKusick.

Andrew D. Schlichter, with whom Joel D. Rohlf and Schlichter Bogard & Denton, LLP were on brief, for appellant Sanborn.

Sarah E. Walters, with whom Mark W. Pearlstein, Natasha L. Dobrott, and McDermott Will & Emery LLP were on brief, for appellee.

December 21, 2022

**LYNCH**, **Circuit Judge**.  In these two different qui tam cases in which the United States executed a settlement agreement with defendant AthenaHealth, Inc. ("Athena") and multiple relators, relators Cheryl Lovell and William McKusick appeal from the district court's denial of their entire claim for attorneys' fees under the False Claims Act ("FCA"), 31 U.S.C. § 3729 et seq. The district court did so on the basis that such fees were available only to first-to-file relators and Lovell and McKusick were not first-to-file relators.  United States v. AthenaHealth, Inc., No. 17-cv-12125, 2022 WL 658654, at *4-5 (D. Mass. Mar. 3, 2022).

The first-to-file relator, Geordie Sanborn, appeals from the omission of certain claimed fees from his award of attorneys' fees.  Both appeals present questions of first impression for this court.

We affirm as to Lovell and McKusick on narrow reasoning, confined to the facts concerning the provisions of the government's settlement agreement.  We conclude that Lovell and McKusick did not receive a relator's share and so are not entitled to attorneys' fees. We leave for another day the issue of whether such fees are restricted to first-to-file relators.  We also do not address different factual situations where the settlement agreement reached by the United States provides for payment of relator's shares to multiple relators.  We affirm as to Sanborn, rejecting

his argument under the text of 31 U.S.C. § 3730(d)(1) that he may be allowed fees associated with his claim in which the government did not intervene.

**I.**

**A.**

The False Claims Act imposes liability on any person who, inter alia, "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval," 31 U.S.C. § 3729(a)(1)(A), "to an officer, employee, or agent of the United States," id. § 3729(b)(2)(A)(i). The statute authorizes two types of actions. The government can bring a civil action against the alleged false claimant. Id. § 3730(a). Alternatively, a private person (a "relator") can bring a qui tam civil action in the government's name "for the person and for the United States Government." Id. § 3730(b). Qui tam plaintiffs must file their complaints under seal and serve a copy of the complaint, along with all material evidence, on the government. Id. § 3730(b)(2). The government may then decide to intervene, "in which case the action shall be conducted by the Government." Id. § 3730(b)(4)(A). If the government does not intervene, the qui tam plaintiff "shall have the right to conduct the action." Id. § 3730(b)(4)(B). A plaintiff's complaint may remain sealed for an extended period while the government investigates the allegations prior to making its intervention decision. See id. § 3730(b)(2)-(3).

We recite only the necessary undisputed facts. Athena is a medical software company that sells health record services and other cloud-based products. Relator Sanborn works in business development and sales for one of Athena's competitors. Relators Lovell and McKusick operate a home-healthcare service that was one of Athena's clients.

On October 30, 2017, Sanborn filed a sealed qui tam complaint against Athena. The complaint alleged that Athena had operated incentive programs to induce purchases of Athena's services in violation of the Anti-Kickback Statute, 42 U.S.C. § 1320a-7b(b) (the "Kickback Claim"). Sanborn's complaint also alleged that Athena marketed its electronic health record technology with a false guarantee of compliance with federal certification requirements (the "EHR Compliance Claim").

Roughly two months later, on December 21, 2017, Lovell and McKusick filed a separate qui tam complaint against Athena. They amended that complaint on April 18, 2018. Like Sanborn, Lovell and McKusick alleged that Athena's incentive programs violated the Anti-Kickback Statute (again, the "Kickback Claim"). They also alleged that Athena's billing software submitted false claims for services (the "Billing Claim").

The government conducted an investigation over the next three years. On September 22, 2020, the government reached an

agreement in principle with Athena to settle all the claims. At some point in December 2020, both sets of relators reached an agreement between themselves as to how to allocate any relator's share from the anticipated settlement. The terms of this agreement are not in the record. On January 22, 2021, the government filed a notice in court that it was electing to intervene in part in both Sanborn's case and Lovell and McKusick's case. The government's complaint in intervention, filed on January 25, 2021, intervened as to the relators' Kickback Claims. The government did not intervene in Sanborn's EHR Compliance Claim or in Lovell and McKusick's Billing Claim.

On January 27, 2021, the government, the relators, and Athena entered into a settlement agreement, which settled both the Kickback Claims in which the government had intervened and the relators' remaining claims.[1] Athena agreed to pay the government (not the relators) over $18,250,000. The settlement agreement stated that "[i]t is understood by all the Parties that Relator Sanborn and Relators Lovell and McKusick have reached their own agreement regarding their respective shares of any funds paid by the United States to Relator Sanborn." The settlement agreement

_____

[1] The settlement agreement did not release Athena from potential liability to the government for claims other than the Kickback Claims.

also reserved the relators' ability to seek, and Athena's ability to contest, payment of attorneys' fees pursuant to § 3730(d).

In February 2021, the government and the relators executed a separate agreement. The parties agree that, pursuant to this agreement, the government paid an agreed amount to Sanborn on March 15, 2021. Under the terms of the private agreement among the relators, not involving the government or Athena, Sanborn paid to Lovell and McKusick a sum purporting to be part of the payment he received from the government. The sum paid is not in evidence.

**C.**

Both sets of relators sought an award of attorneys' fees from the district court under § 3730(d). Sanborn sought roughly $762,000 in attorneys' fees and $15,000 in expenses; Lovell and McKusick sought roughly $1,079,000 in fees and $4,000 in expenses.[2]

The district court denied Lovell and McKusick's motion for attorneys' fees and denied Sanborn's motion in part. AthenaHealth, 2022 WL 658654, at *8. As to Lovell and McKusick, the court held that they were barred from recovering fees for their Kickback Claim under § 3730(d)(1) because they were not the first-to-file relator. Id. at *4-5 (citing 31 U.S.C. § 3730(b)(5)). As

---

[2] After briefing on the fee motions had concluded, Sanborn filed a supplemental declaration seeking roughly $84,000 in additional fees and costs incurred during the fee request proceeding itself. The district court did not expressly rule on that additional request.

- 8 -

to Sanborn, the court held that he was entitled to fees under § 3730(d)(1) for his Kickback Claim but not his EHR Compliance Claim, because the government did not intervene in the latter claim. Id. at *5-6. The court also held that Sanborn had waived any alternative argument for fees under § 3730(d)(2) by failing to brief the issue. Id. at *6. The court thus reduced the fee lodestar it had calculated for Sanborn by 50 percent to reflect the exclusion of the EHR Compliance Claim[3] and awarded Sanborn roughly $391,000 in fees and expenses. See id. at *6-8.

These timely appeals followed. The government has not taken a position in either appeal.

**II.**

We review questions of statutory interpretation de novo. See Baker v. Smith & Wesson, Inc., 40 F.4th 43, 47 (1st Cir. 2022).

These consolidated appeals turn on relators' entitlement to attorneys' fees under the text of 31 U.S.C. § 3730(d). This was the ground on which the settlement agreement provided for a potential award.

---

[3] The district court applied an across-the-board percentage reduction (based on the court's assessment of the relative complexity of the two claims and potential synergies in their prosecution) because counsel had not distinguished between time spent on each claim. See AthenaHealth, 2022 WL 658654, at *6-7. The court did not directly address Lovell and McKusick's claim to fees for their non-intervened Billing Claim, but implicitly rejected this claim on the same basis that it reduced Sanborn's fee award. See id. at *6.

- 9 -

**A.**

We begin with Lovell and McKusick's claim to attorneys' fees for their Kickback Claim under § 3730(d)(1). Athena defends the district court's denial of fees on two independent bases: (1) that the FCA's first-to-file bar, 31 U.S.C. § 3730(b)(5), precludes Lovell and McKusick, who filed their complaint after Sanborn, from recovering attorneys' fees on this claim and (2) that receipt of a relator's share is a precondition for recovery of fees under § 3730(d)(1) and that the payment Lovell and McKusick received from Sanborn via a private sharing agreement was not a relator's share. We reach only the second argument.[4]

"As always in matters of statutory interpretation, we start with the text." United States v. Millennium Lab'ys, Inc., 923 F.3d 240, 250 (1st Cir. 2019). Reasonable attorneys' fees may be awarded pursuant to § 3730(d)(1) of the FCA, which provides:

> If the Government proceeds with an action brought by a person under subsection (b), such person shall, subject to the second sentence of this paragraph, receive at least 15 percent but not more than 25 percent of the proceeds of the action or settlement of the claim, depending upon the extent to which the person substantially contributed to the prosecution of the action. Where the action is one which the court finds to be based primarily on disclosures of specific information (other than information provided by the person bringing the action) relating to allegations

---

[4] Because we do not reach the first-to-file issue, there is no need to discuss our prior decision in United States v. Millennium Laboratories, Inc., 923 F.3d 240 (1st Cir. 2019).

- 10 -

or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation, or from the news media, the court may award such sums as it considers appropriate, but in no case more than 10 percent of the proceeds, taking into account the significance of the information and the role of the person bringing the action in advancing the case to litigation. Any payment to a person under the first or second sentence of this paragraph shall be made from the proceeds. Any such person shall also receive an amount for reasonable expenses which the court finds to have been necessarily incurred, plus reasonable attorneys' fees and costs. All such expenses, fees, and costs shall be awarded against the defendant.

31 U.S.C. § 3730(d)(1).[5]

The next-to-last sentence provides that "[a]ny such person shall also receive . . . reasonable attorneys' fees." Id. (emphasis added). "Such" normally refers to the nearest reasonable antecedent. See, e.g., Barnhart v. Thomas, 540 U.S. 20, 26 (2003); Littlefield v. Mashpee Wampanoag Indian Tribe, 951 F.3d 30, 37 (1st Cir. 2020); A. Scalia & B. Garner, Reading Law: The Interpretation of Legal Texts 144 (2012). Here, that is "person" in the preceding sentence, which states that "[a]ny payment to a person under the first or second sentence of this paragraph shall be made from the proceeds." 31 U.S.C. § 3730(d)(1). So the "such person" entitled to reasonable attorneys' fees is one who receives

---

[5] The second sentence of § 3730(d)(1) is not relevant to the present appeals.

a payment "under the first or second sentence" of § 3730(d)(1) -- i.e., a person who receives a statutory relator's share. This reading draws further support from the fact that a person entitled to attorneys' fees is one who "shall also" receive these fees. Id. "Also" presupposes the receipt of something -- a relator's share -- in addition to the fees. See United States ex rel. Bryant v. Cmty. Health Sys., Inc., 24 F.4th 1024, 1032 (6th Cir. 2022).

There are two conditions for receipt of a relator's share within the meaning of the statute that are stated in the first sentence of § 3730(d)(1). First, the relator must have brought an "action" in which the government intervenes.[6] 31 U.S.C. § 3730(d)(1). Second, the relator must receive a payment of "at least 15 percent but not more than 25 percent of the proceeds of the action or settlement of the claim." Id. The "such person" who is entitled to reasonable attorneys' fees is defined as one who meets these requirements and receives a relator's share. See also Bryant, 24 F.4th at 1032 ("The plain meaning of the statute thus provides that only persons who receive a relator's share may recover attorney fees.").

By its terms, § 3730(d)(1) does not authorize "recei[pt]" of a relator's share via a private sharing agreement between relators. A relator's share is defined as "at least 15

---

[6] We address the meaning of "action" infra.

- 12 -

percent but <u>not more than</u> 25 percent of the proceeds." <u>Id.</u> § 3730(d)(1) (emphasis added). A relator -- even one who received the maximum 25 percent relator's share -- could not share the statutory minimum of 15 percent of the proceeds with another relator via private agreement while still retaining at least 15 percent for herself. The focus must thus be on the receipt of a relator's share payment from the government.

Other courts have agreed that relators do not receive a statutory relator's share when they receive funds via a private sharing agreement. <u>See, e.g.</u>, <u>United States ex rel. McNeil</u> v. <u>Jolly</u>, 451 F. Supp. 3d 657, 668-69 (E.D. La. 2020); <u>United States</u> v. <u>NextCare, Inc.</u>, No. 11-cv-141, 2013 WL 431828, at *2-3 (W.D.N.C. Feb. 4, 2013).

This conclusion is supported by the FCA's overall statutory scheme. The FCA affords the government broad authority and contemplates that the government will serve a gatekeeping function. <u>See, e.g.</u>, 31 U.S.C. § 3730(b)(4) (the government may "proceed with the action" or "decline[] to take over the action"); <u>id.</u> § 3730(c)(1) (the government "shall have the primary responsibility for prosecuting" intervened actions). This reading of § 3730(d)(1) puts the government in the driver's seat and accords with the FCA's goal of achieving a "golden mean" between providing sufficient incentives to qui tam plaintiffs and discouraging opportunism. <u>United States ex rel. Ven-A-Care of the</u>

Fla. Keys, Inc. v. Baxter Healthcare Corp., 772 F.3d 932, 944 (1st Cir. 2014) (quoting Graham Cnty. Soil & Water Conservation Dist. v. United States ex rel. Wilson, 559 U.S. 280, 294 (2010)).  As Athena notes, a contrary construction might permit relators to generate an entitlement to fees by making even minor payments amongst themselves pursuant to a private agreement.

Relators do not receive a relator's share within the meaning of the statute, see 31 U.S.C. § 3730(d)(1), when the payment they receive is pursuant to a private agreement under which they receive payment from a relator who has received a relator's share.  Lovell and McKusick did not receive a relator's share within the meaning of § 3730(d)(1) and thus are not entitled to fees under that provision.[7]

**B.**

We next consider Sanborn's claim to attorneys' fees for work on his EHR Compliance Claim, in which the government did not

---

[7]    Lovell and McKusick argue that the government's acknowledgement in the settlement agreement that the relators had reached a private sharing agreement regarding the allocation "of any funds paid by the United States to Relator Sanborn" evinces an intent by the government that all relators should receive fees. This argument does not bear on whether Lovell and McKusick received a statutory relator's share under § 3730(d)(1).  It also seems misplaced.  If anything, the separate agreement the relators subsequently executed with the government concerning payment of the relator's share -- an agreement that is not in the record and whose terms are not known to Athena or to the court, but pursuant to which the government paid a relator's share only to Sanborn -- would be more probative of this question than the settlement agreement.

- 14 -

intervene.[8] In the district court, Sanborn moved for fees solely pursuant to § 3730(d)(1). We conclude that Sanborn is not entitled to fees associated with his EHR Compliance Claim under the text of § 3730(d)(1) and that he has waived any entitlement to fees under § 3730(d)(2).[9]

The relevant language in § 3730(d)(1) is the first clause: "If the Government proceeds with an action . . . ." 31 U.S.C. § 3730(d)(1) (emphasis added). The question is whether "action" refers to a case as a whole or to individual claims. We conclude that the latter reading is the better construction of the statute.

As then-Judge Alito recognized in United States ex rel. Merena v. SmithKline Beecham Corp., 205 F.3d 97 (3d Cir. 2000), one "quirk[]" of the FCA is that "the statute is based on the model of a single-claim complaint" even though many qui tam actions involve multiple claims. Id. at 101. For example, a qui tam plaintiff is authorized to "bring a civil action for a violation of section 3729." 31 U.S.C. § 3730(b)(1) (emphasis added). The

---

[8] We leave it to the district court to determine whether it wishes to address, as it has not done explicitly, Sanborn's claim for additional fees incurred during the fee proceedings.

[9] Lovell and McKusick incorporate Sanborn's arguments by reference with respect to their non-intervened Billing Claim. Lovell and McKusick are not entitled to fees for this claim both because they did not receive a relator's share and for the same reasons Sanborn is not entitled to fees for his EHR Compliance Claim.

government may then either "proceed with the action" or "decline[]" to take over the action." Id. § 3730(b)(2), (4) (emphasis added). Having intervened, the government has the option to "dismiss the action" or "settle the action." Id. § 3730(c)(2)(A)-(B) (emphasis added). Merena concluded that these provisions should be read to apply on a claim-by-claim basis. See Merena, 205 F.3d at 102. Merena then went on to apply this logic to § 3730(e)(4), the FCA's public disclosure bar. See id. The Supreme Court subsequently adopted Merena's reading of the public disclosure bar in Rockwell International Corp. v. United States, 549 U.S. 457, 476 (2007).

In the years since Rockwell, the weight of authority, including in our circuit, has continued to utilize a claim-by-claim analysis in applying the FCA's qui tam provisions. See, e.g., Millennium, 923 F.3d at 253 (proceeding claim-by-claim in conducting a first-to-file analysis); United States ex rel. Schumann v. Astrazeneca Pharms. L.P., 769 F.3d 837, 846 (3d Cir. 2014) ("[The] FCA's reference to 'action' may reasonably be read to mean 'claim' because the statute envisions a single-claim complaint." (citing Merena, 205 F.3d at 101-02)); United States ex rel. Rauch v. Oaktree Med. Ctr., P.C., No. 15-cv-01589, 2020 WL 1065955, at *9 (D.S.C. Mar. 5, 2020) (noting this "well-established interpretation of the FCA").

We apply this construction here and hold that government intervention in an "action" under the first sentence of § 3730(d)(1) means government intervention in an individual claim.

We are not swayed by Sanborn's arguments to the contrary. Sanborn points out that § 3730(d)(1) uses both "action" and "claim": "If the Government proceeds with an action brought by a person under subsection (b), such person shall . . . receive . . . proceeds of the action or settlement of the claim . . . ." 31 U.S.C. § 3730(d)(1) (emphasis added). He argues that reading "action" to mean "claim" would render the use of the former term superfluous.

But the canon against surplusage is not an absolute rule, and may not be "a particularly useful guide to a fair construction of [a] statute" where the statute at issue reflects "inartful drafting." King v. Burwell, 576 U.S. 473, 491 (2015). Such is the case here. One of the FCA's unusual features is its use of "claim" and "action" interchangeably to refer to a case. See, e.g., United States ex rel. Garbe v. Kmart Corp., 824 F.3d 632, 641 (7th Cir. 2016) (recognizing "Congress's free use of 'claim' (along with 'action') to mean 'civil action' throughout the FCA"); United States ex rel. Int'l Bhd. of Elec. Workers Loc. Union No. 98 v. Farfield Co., 5 F.4th 315, 331 (3d Cir. 2021) (similar); Sanders v. Allison Engine Co., 703 F.3d 930, 939 (6th Cir. 2012) (similar); cf. Kellogg Brown & Root Servs., Inc. v. United States

- 17 -

_ex rel. Carter_, 575 U.S. 650, 664 (2015) (noting the "many interpretive challenges" presented by the FCA's qui tam provisions). In context, § 3730(d)(1)'s reference to "the claim" contemplates a singular claim in keeping with the FCA's model of a single-claim complaint.[10] It does not contemplate individual claims so as to generate an inference that the use of "action" in the same sentence cannot bear this meaning.

Sanborn also argues that _Merena_ and _Rockwell_ are distinguishable because they interpreted § 3730(e)(4), not § 3730(d)(1), and because Congress amended the former provision in 2010 to specify "action or claim" but did not similarly modify § 3730(d)(1). _See_ Patient Protection and Affordable Care Act, Pub. L. No. 111-148, 124 Stat. 119 (2010). As to the first argument, while _Merena_'s holding involved the FCA's public disclosure bar, its logic clearly extended to other provisions of the law. _See Merena_, 205 F.3d at 102. Subsequent cases have interpreted these other provisions to apply on a claim-by-claim basis. _See, e.g._, _Millennium_, 923 F.3d at 253; _Rauch_, 2020 WL 1065955, at *9. As to the second argument, "'[c]ongressional

---

[10] Section 3730 does not define the term "claim." Section 3729 defines "claim" as "any request or demand . . . for money or property" -- in other words, the improper "claims" with which the False Claims Act is concerned. 31 U.S.C. § 3729(b)(2)(A). This definition is limited to § 3729, _see id._ § 3729(b), and would also not make sense as applied here, _see, e.g._, _Farfield Co._, 5 F.4th at 331 (rejecting rigid application of § 3729's definition because "'claim' eschews the presumption of uniform usage").

inaction lacks persuasive significance' in most circumstances." Star Athletica, L.L.C. v. Varsity Brands, Inc., 137 S. Ct. 1002, 1015 (2017) (alteration in original) (quoting Pension Benefit Guar. Corp. v. LTV Corp., 496 U.S. 633, 650 (1990)). Because the government did not intervene in Sanborn's EHR Compliance Claim, he is not entitled under § 3730(d)(1) to attorneys' fees for that claim.[11]

We reject Sanborn's argument that he is entitled to recover all fees associated with his EHR Compliance Claim for the independent reason that work on that claim was useful and necessary to the settlement of the Kickback Claim. The district court considered both claims and concluded that the EHR Compliance Claim was "substantially more complex than the [Kickback Claim] and comprised the majority of [Sanborn's] complaint," that the claims were "not substantially interconnected," and that the claims' "operative legal theories were distinct." AthenaHealth, 2022 WL 658654, at *7. Even so, the district court recognized some potential synergies between the claims and thus reduced Sanborn's

---

[11] Sanborn cites cases where relators received attorneys' fees even for non-intervened claims, but none of these cases engage in much textual analysis of § 3730(d)(1). To the extent that these cases awarded fees for both intervened and non-intervened claims, they can be read as assuming an entitlement to fees under both § 3730(d)(1) and (d)(2). See, e.g., United States ex rel. Fallon v. Accudyne Corp., 97 F.3d 937, 938 (7th Cir. 1996) (noting that both provisions were at play). These cases do not alter our reading of § 3730(d)(1).

lodestar by 50 percent rather than the 70 percent proposed by Athena. See id. This was not an abuse of discretion. See Pérez-Sosa v. Garland, 22 F.4th 312, 320 (1st Cir. 2022).

Sanborn argues in the alternative that he is entitled to fees under § 3730(d)(2), pursuant to which a qui tam plaintiff may recover fees for a settled "action" in which the government did not intervene. Sanborn did not make this argument to the district court, and the district court found it waived. AthenaHealth, 2022 WL 658654, at *6. We agree that this alternative theory was waived. See Mancini v. City of Providence ex rel. Lombardi, 909 F.3d 32, 46 (1st Cir. 2018) (noting that parties are expected "to spell out their legal theories face-up and squarely in the trial court" and that "if a claim is merely insinuated rather than actually articulated, that claim ordinarily is deemed unpreserved for purposes of appellate review" (internal quotation marks omitted) (quoting Iverson v. City Of Boston, 452 F.3d 94, 102 (1st Cir. 2006))).

## III.

For the foregoing reasons, we affirm the district court.