COLLOTON, Circuit Judge.
As the Supreme Court has observed, “[t]he False Claims Act’s qui tarn provisions present many interpretive challenges.” Kellogg Brown & Root Servs., Inc. v. United States ex rel. Carter, — U.S. -, 135 S.Ct. 1970, 1979, 191 L.Ed.2d 899 (2015). In this case, two private parties, called “relators,” brought an action in the name of the United States against several government contractors, alleging that the contractors defrauded the government. The United States, after investigating the case, elected to proceed with the action against several defendants in place of the relators, and the government eventually reached a settlement with two of the contractors. There followed a dispute between the relators and the government over how much, if any, of the recovery should be allocated to the rela-tors. The district court awarded the rela-tors a percentage of the entire settlement.
This appeal raises a legal question under the Act: When the government proceeds with an action brought by a relator under the False Claims Act, and then settles both the claim brought by the relator and a different claim that does not overlap factually with the claim brought by the relator, is the relator entitled to a share of the proceeds of both claims? The better view according to the text and structure of the statute is that the relator may recover only from the proceeds of the settlement of the claim that he brought. Because the district court’s order does not clearly apply this legal standard or make factual findings that are necessary to resolve the case under this standard, we vacate the order and remand for further proceedings.
I.
In September 2004, Norman Rille and Neal Roberts, as relators, sued several government contractors on behalf of the United States, alleging violations of the False Claims Act, 31 U.S.C. §§ 3729-3733. The contractors were either “systems integration consultants” who recommend hardware and software products to meet the government’s information technology needs, or technology vendors who supply those products. The relators’ original complaint alleged a kickback scheme, under which the vendors allegedly paid kickbacks to the consultants in exchange for the consultants recommending the products of the vendors to the government.
The relators added Cisco Systems, Inc., as a defendant contractor in September 2005. Shortly thereafter, the relators offered the government some 700,000 pages of documents; according to the relators, these documents contained evidence of kickbacks and defective pricing involving Cisco and other defendants. Earlier in 2005, the Inspector General in the General Services Administration selected 112 government contracts for review. Among those was a contract with Comstor, a distributor of Cisco products. Comstor’s contract allowed it to sell Cisco’s technology products and services to government agencies. After the audit, the Inspector General concluded that Comstor made inaccurate or incomplete disclosures to the government, and failed to comply with *371 price reduction obligations under the contract.
In October 2006, the relators amended their complaint to allege that the defendant contractors failed to provide “current, accurate, and complete disclosure of their best pricing ..., thereby causing defective GSA and other government pricing schedules.” According to the new allegation, the defective pricing resulted in violations of the False Claims Act “as to both direct sales to the Government by a Defendant, and indirect sales through [a vendor], with or without a Kickback.” In April 2007, the government elected to intervene in part of the action, but declined to intervene against Cisco at that time, as the government had not completed its review of the company.
In March 2008, the government moved to intervene against Cisco. The government explained that since April 2007, it had “received and considered additional information from the Relators,” and that it had “also obtained and assessed considerable additional information and documents from Cisco, as well as a number of non-party witnesses that it had not had an opportunity to consider prior to April 2007.” After the district court granted the motion in April 2008, the government proceeded with the action as filed by the relators against Cisco and other defendants.
After two years of negotiation, the government reached a settlement with Cisco and Comstor under which Cisco agreed to pay the government $44.16 million, and Comstor agreed to pay $3.84 million. According to the agreement, the government alleged that Cisco and Comstor engaged in the following “Covered Conduct”:
(1) made inaccurate and/or incomplete disclosures and/or false statements, and/or presented or caused to be presented false claims to the United States; (2) failed to disclose relevant discount, rebate, true-up, benefits, credits, value-added, and pricing information to the United States and, as a result, Contract pricing and orders issued pursuant to the Contract were inflated; (3) as a result of the defective disclosures of pricing information, submitted or caused to be submitted false or fraudulent claims for payment; and (4) failed to comply with price reduction obligations under the Contract and related letters of supply.
The agreement also provided for the dismissal of the relators’ action against Cisco, but did not resolve the issue of the rela-tors’ entitlement to a share of the settlement proceeds.
Following the settlement, the relators moved to recover a share of the proceeds. The applicable statute allows a relator to receive “at least 15 percent but not more than 25 percent of the proceeds of the action or settlement of the claim, depending upon the extent to which the person substantially contributed to the prosecution of the action.” 31 U.S.C. § 3730(d)(1). The government objected to recovery on the ground that the relators’ complaint did not plead the conduct that formed the basis of the claims that the government ultimately settled with Cisco and Comstor. The government maintained that the rela-tors’ claims based on an alleged kickback scheme lacked merit, and that the settlement covered a separate defective pricing scheme.
The district court rejected the government’s argument and awarded the relators seventeen percent of the $44.16 million paid by Cisco and fifteen percent of the $3.84 million paid by Comstor. United States ex rel. Rille v. Cisco Sys., Inc., No. 4:04CV00988-BRW, 2011 WL 4352309, at *4 (E.D.Ark. Sept. 19, 2011). The government appeals the order.
*372 II.
The False Claims Act provides that a private person “may bring a civil action for a violation of section 3729 for the person and for the United States Government.” 31 U.S.C. § 3730(b)(1). Section 3729 establishes liability for certain acts that constitute false claims against the government. When a private person brings an action under § 3730(b), the government has the option to “proceed with the action” or to “decline[] to take over the action.” Id. § 3730(b)(4). If the government “proceeds with an action brought by a person under [§ 3730](b),” then the private person is entitled, with an exception not relevant here, to receive a percentage of “the proceeds of the action or settlement of the claim.” Id. § 3730(d)(1).
The relators contend that if the government proceeds with an action brought by a relator, then the relator is automatically entitled to a percentage of any “proceeds” that the government receives as a result. In their view, it does not matter whether the claim settled by the government is factually related to the claim brought by the relators. As long as the settled claim is resolved in an action that was initiated by the relators, the relators say that they are entitled to recovery. Although the provisions of the False Claims Act do not always “operate together smoothly like a finely tuned machine,” Kellogg, 135 S.Ct. at 1979, we conclude that the statute will not bear the construction advanced by the relators.
The relators are entitled to a share of “the proceeds of the action or settlement of the claim.” 31 U.S.C. § 3730(d)(1). The Act contemplates that both a relator’s “action” and relator’s “claim” are filed in court: Section 3730(e)(4)(A) provides that “[t]he court shall dismiss an action or claim” brought by a relator under certain circumstances. The statute also distinguishes between two courses of action for a relator — “bringing the action” and “settling the claim.” 31 U.S.C. § 3730(d)(2). When addressing the relator’s right to recover proceeds, the statute’s distinction between “the action” and “settlement of the claim” reads as though the first object (“proceeds of the action”) captures proceeds of an action litigated to judgment and the second object (“proceeds of the ... settlement of the claim”) encompasses proceeds of a settlement. If proceeds of a settlement were covered by the first object concerning “proceeds of the action,” then the second object concerning settlement of the claim would be superfluous.[1]
This case involves a settlement. With respect to settlement, § 3730(d)(1) is clear that the relator’s share is based only on proceeds of “the claim.” The use of the definite article refers back to the claim that is “brought by” the relator in “an action” that he initiates. The next subsection of the statute likewise refers to the relator “settling the claim, ” that he brought, in a case where the government does not proceed with the action. 31 U.S.C. § 3730(d)(2) (emphasis added). The settlement language of § 3730(d)(1) thus does not extend to a different claim that is settled by the government when that claim was not originally “brought by” the relator. The relators’ right to recovery is limited to a share of the settlement of the claim that they brought.
The relators focus on the phrase “proceeds of the action,” and assert that *373 “once the Government intervenes in the relators’ action and receives its proceeds,” the relator is entitled to a share of all the proceeds. . Appellees’ Br. at 25. Even assuming the proceeds-of-the-action language applies in the case of a settlement, the phrase “proceeds of the action” refers back to “an action brought by a person.” The relators would have this mean proceeds not of the action as brought by the relators, but of the action as developed after intervention by the government. As a textual matter, this seems unnatural. The phrase “proceeds of the action” is paired with “proceeds of the ... settlement of the claim,” and the settlement language refers to “the claim” brought by the relator, not a claim later added by the government. It would be odd to read the adjoining phrase — “proceeds of the action” — to encompass more than the action as brought by the relator. It also would be inconsistent with the purposes of the Act to permit a relator automatically to receive a share of the proceeds when the relator might have had nothing to do with the government’s recovery on a particular claim that was added after the government’s intervention.
The relators’ reading would create unwarranted disparities in recovery depending on how the government pursues a new claim. The government has a choice: it may add a new claim while proceeding with an action brought by a relator, or it may pursue the same new claim through the use of an alternative remedy. Section 3730(c)(5) provides that if the government pursues “its claim through any alternate remedy available to the Government,” then “the person initiating the action shall have the same rights” in the alternate proceeding “as such person would have had” if the government had proceeded -with the original action. This means that “the relator has a right to recover a share of the proceeds of the alternate remedy to the same degree that' he or she would have been entitled to a share of the proceeds of an FCA action.” United States ex rel. Barajas v. United States, 258 F.3d 1004, 1010 (9th Cir.2001) (internal quotation omitted).
When the government recovers from a defendant in an alternate proceeding, however, a relator is not entitled to a share of whatever recovery the government obtains, just because the government’s claim could have been added to the original action brought by the relator. As the Sixth Circuit explained in United States ex rel. Bledsoe v. Community Health Systems, Inc., 342 F.3d 634 (6th Cir.2003), a relator seeking recovery must establish that “there exists [an] overlap between Relator’s allegations and the conduct discussed in the settlement agreement.” Id. at 651. A relator is not entitled to a share of the proceeds derived from a non-overlapping claim that the government could have added in the original action but instead pursues in an alternate proceeding. Given the equivalence of recovery required by § 3730(c)(5) and § 3730(d), it follows that the relator also has no right to a share if the government adds the non-overlapping claim to the original action after intervening. Of course, the government also may settle a non-overlapping claim without filing it in court. Nothing in the Act requires the government to generate unnecessary litigation.
The question in this case, therefore, is whether the government’s recovery from Cisco and Comstor is the “proceeds of the ... settlement of the claim,” that is, “the claim” brought by the relators. We agree with the Sixth Circuit that these proceeds of “the claim” must extend to proceeds of a settlement in which “the conduct contemplated in the settlement agreement ... overlap[s] with the conduct alleged in [the] *374 Relator’s complaint.” Bledsoe, 342 F.3d at 651. Otherwise, the government could deprive the relator of his right to recover simply by recasting the same or similar factual allegations in a new claim or by pursuing the substance of the relator’s claim in an álternate proceeding. But there must be a factual overlap for the relators to recover.
In its September 2011 order determining the relators’ share of settlement proceeds, the district court did not make adequate factual findings to allow appellate review of whether the settlement was based on claims that factually overlapped with the claims brought by the relators. See Fed.R.Civ.P. 52(a); King v. United States, 553 F.3d 1156, 1161-62 (8th Cir.2009); Darst-Webbe Tenant Ass’n Bd. v. St. Louis Hous. Auth., 339 F.3d 702, 711-12 (8th Cir.2003). At one point, the court said that the allegations in the relators’ complaint “appear to fit within the definition of Covered Conduct” under the settlement- agreement, United States ex rel. Rille, 2011 WL 4352309, at *3, but this cryptic statement is not sufficient to afford this court “a clear understanding of the basis of the trial court’s decision.” Allied Van Lines, Inc. v. Small Bus. Admin., 667 F.2d 751, 753 (8th Cir.1982).
Elsewhere, the district court apparently relied on its conclusion that'the relators “were the catalyst leading to the Government’s settlement,” while acknowledging that the relators “were more focused on a kickback scheme that the Government asserts did not exist.” United States ex rel. Rille, 2011 WL 4352309, at *4. A panel of this court in Roberts v. Accenture, LLP, 707 F.3d 1011 (8th Cir.2013), appeared to accept this “catalyst” theory as a basis for recovery, on the view that a causal connection between the relator’s claim and a later settlement is sufficient to show that a settlement is “related” to a claim brought by the relator. Id. at 1017.
Whatever the merit of this theory as a policy matter, it is not derived from the statute. The statute allows relators to recover a percentage of the proceeds of the settlement of “the claim” brought by the relators, and only that claim. The Act contemplates that the government, after it elects to intervene, may “clarify or add detail” to the claims brought by the rela-tors, or may “add any additional claims.” 31 U.S.C. § 3731(c). Recovery under § 3730(d)(1), however, does not extend to proceeds of the settlement of such “additional claims,” whether or not they are causally connected to the claim brought by the relators. The Act does not provide for an award to relators from the proceeds of settlements that “resulted from” the claim or were “caused by” the claim; relators are limited to a percentage of “proceeds of the ... settlement of the claim.”
For these reasons, we conclude that the case must be remanded for application of the correct legal standard and adequate findings of fact. To resolve the relators’ claim for recovery, the district court should make findings about whether there is a factual overlap between the claim or claims settled by the government and the claims brought by the relators, such that proceeds of the settlement (or any portion thereof) should fairly be characterized as “proceeds of the ... settlement of the claim” brought by the relators.[2]
*375 The district court’s order of September 19, 2011, R. Doc. 237, is vacated, and the case is remanded for further proceedings.

. The dissent’s answer is that when a relator brings only a single claim, and the government settles that claim, the proceeds of the settlement are not "proceeds of the ... settlement of the claim.” Post, at 376. We reject that view as contrary to the plain meaning of the text.

. In,its opening brief, the government argued that the relators are not entitled to any share of the settlement proceeds because their defective pricing claim was legally insufficient under Federal Rule of Civil Procedure 9(b). A panel of this court rejected a comparable contention in Roberts, 707 F.3d at 1017-18, and the government does not pursue its Rule 9(b) argument before the en banc court. At oral argument, the government sought a re *375 mand for findings on whether the claim settled by the government overlapped factually with the claims brought by the relators.