This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**No. A-1-CA-38974**

**MONICA GALLOWAY, SHAWNA
MAESTAS, and JOLENE GONZALES,**

 Plaintiffs-Appellants,

v.

**NEW MEXICO OFFICE OF THE
SUPERINTENDENT OF INSURANCE,**

 Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY
Francis J. Mathew, District Judge**

Egolf + Ferlic + Martinez + Harwood, LLC
Kate Ferlic
Kristina Martinez
Mark Cox
Santa Fe, NM

for Appellants

Todd S. Baran
Santa Fe, NM

for Appellee

**MEMORANDUM OPINION**

**BOGARDUS, Judge.**

**{1}** Monica Galloway, Shawna Maestas, and Jolene Gonzales (collectively, Plaintiffs) appeal the district court's judgment in favor of Defendant New Mexico Office of the Superintendent of Insurance (OSI). Plaintiffs filed a complaint for declaratory judgment seeking release of funds recovered by OSI after it held administrative proceedings delegated to it following the voluntary dismissal of a qui tam action brought by Plaintiffs

against Presbyterian Health Plan (PHP), pursuant to the Fraud Against Taxpayer Act (FATA), NMSA 1978, §§ 44-9-1 to -14 (2007, as amended through 2015). The district court dismissed the complaint with prejudice. Plaintiffs argue the district court erred in dismissing the complaint and thus improperly denied them a share of the funds recovered by OSI. Plaintiffs contend (1) they are entitled to a percentage of the funds recovered by OSI pursuant to their agreement with the Attorney General (AG); and (2) the district court misapplied FATA and ignored substantial evidence to deprive them of their rightful share of those funds. We affirm.

## BACKGROUND

**{2}**    Plaintiffs, employees of OSI, brought a qui tam action against PHP, pursuant to FATA, alleging that PHP unlawfully underpaid taxes on insurance premiums by claiming improper credits and deductions from 2000 through 2014. Later, the AG intervened in Plaintiffs' qui tam action and added Presbyterian Network, Inc. (PNI) and Presbyterian Insurance Company (PIC) as defendants. The AG, Presbyterian,[1] and Plaintiffs ultimately reached a settlement agreement (the Settlement Agreement).

**{3}**    The terms of the Settlement Agreement contemplated recovery in two parts. First, Presbyterian agreed to pay $18.5 million immediately for a two-year period, 2003-2004, of unlawfully claimed tax deductions concerning Medicaid. Second, "the remaining claims would be pursued through . . . OSI administrative proceedings." Plaintiffs and the AG separately reached an agreement that Plaintiffs' share of recovery from the $18.5 million Settlement Agreement "shall be 20 [percent] of total recovery pursuant to . . . [Section] 44-9-7(A)(1)" of FATA, and that Plaintiffs retained their right "to a share of the proceeds under [Section] 44-9-7(A)" of FATA in the remaining claims that would be pursued through the OSI administrative proceedings. In this separate agreement (the AG Agreement), Plaintiffs and the AG also agreed that the latter part of the Settlement Agreement functioned as a delegation of the pursuit of recovery from the AG to OSI—an "alternate remedy" as that term is used in Section 44-9-6(H) of FATA. Pursuant to the terms of the Settlement Agreement, Plaintiffs and Presbyterian stipulated to dismissal of the qui tam action with prejudice, and Plaintiffs received 20 percent of Presbyterian's $18.5 million payment.

**{4}**    Plaintiffs' remaining qui tam claims were pursued through OSI administrative proceedings, which resulted in OSI ordering PHP and PIC to pay an additional, total sum of $15,594,169, based on PHP and PIC's erroneous application of overpayment credits as well as credits related to the Medical Insurance Pool (MIP). The OSI orders were based on the findings of an audit conducted by an accounting firm, Examination Resources (ER), which presented OSI with its findings in a final report (the ER Report). PHP and PIC paid the amount ordered by OSI, and OSI set aside 20 percent of this amount—reflecting Plaintiffs' potential share—in a suspense fund but did not release this money to Plaintiffs. Plaintiffs filed a complaint for declaratory judgment against OSI,

---

1PHP, PNI, and PIC are collectively referred to as "Presbyterian."

requesting that the district court enter an order directing OSI to release their share of $15,594,169 recovered by OSI pursuant to the OSI administrative proceedings.

{5}     Following a bench trial, the district court dismissed Plaintiffs' complaint against OSI with prejudice, entering findings of fact and conclusions of law. The district court concluded that the AG Agreement "is a valid and enforceable contract between the State and . . . Plaintiffs" and that this agreement "provide[d] for the possibility of further recoveries related to the ER Report, deeming such proceedings an alternate remedy." Ultimately, however, the district court concluded that the AG Agreement did not entitle Plaintiffs to a share of the $15,594,169 recovered as a result of the OSI administrative proceedings. In so concluding, the district court found that Plaintiffs' qui tam action did not include a claim relating to MIP credits. Plaintiffs appealed the dismissal of their complaint against OSI.

{6}     Upon review, this Court remanded the case to the district court to enter additional findings of fact and conclusions of law. The district court did so, finding, in relevant part, that there was "no overlap" between Plaintiffs' qui tam suit and the administrative proceedings with respect to MIP credits.

I.      **The AG Agreement Does Not Entitle Plaintiffs to 20 Percent of the Funds Recovered as a Result of the OSI Administrative Proceedings**

{7}     Plaintiffs argue the AG Agreement constitutes a contract entitling them to 20 percent of the funds recovered as a result of the OSI administrative proceedings. "We review a district court's interpretation of an unambiguous contract de novo." *Benz v. Town Ctr. Land, LLC*, 2013-NMCA-111, ¶ 31, 314 P.3d 688 (internal quotations marks and citation omitted). We look to the language of a contract to understand the parties' intent and the contract's purpose and meaning. *See Rivera v. Am. Gen. Fin. Servs., Inc.*, 2011-NMSC-033, ¶ 27, 150 N.M. 398, 259 P.3d 803. Contractual language that is unambiguous is conclusive. *See id.*

{8}     The AG Agreement, signed by Plaintiffs and representatives of the AG, reads as follows:

> AGREEMENT BETWEEN [PLAINTIFFS] AND NEW MEXICO [AG]
>
> [Plaintiffs] share of recovery in [qui tam lawsuit] shall be 20 percent of total recovery pursuant to [Section] 44-9-7(A)(1).
>
> The pursuit of recoveries by OSI related to the ER Report or related findings by Office of State Auditor, which is hereby delegated by the AG to OSI, is deemed an alternate remedy as defined in [Section] 44-9-6(H), and encompass[es] [Plaintiffs'] right to a share of the proceeds under [Section] 44-9-7(A).

**{9}** The district court concluded that the AG Agreement is "a valid and enforceable contract between the State and . . . Plaintiffs." The parties do not dispute this conclusion, and neither party claims that the terms of the contract are ambiguous. At issue, then, are the terms of the contract and the district court's interpretation of those terms. Namely, Plaintiffs argue the contract entitles them to a per se award of 20 percent of the amount recovered as a result of the OSI administrative proceedings. OSI disagrees and contends the AG Agreement confers upon Plaintiffs "whatever rights they would have in an alternate remedy proceeding under . . . FATA."

**{10}** While Plaintiffs make much of the phrase "total recovery" as used in the first sentence of the AG Agreement, we do not read this to confer any right upon Plaintiffs other than that already received: 20 percent of the funds collected in their qui tam suit, which were recovered as a result of the Settlement Agreement. Indeed, the first sentence of the AG Agreement unequivocally applies only to the qui tam suit, which was dismissed by stipulation of Plaintiffs and Presbyterian as a result of the Settlement Agreement. We read the second sentence of the AG Agreement as granting Plaintiffs the rights afforded them pursuant to FATA in the OSI administrative proceedings. Having interpreted the terms of the AG Agreement, we turn now to determining what rights Plaintiffs were afforded in the OSI administrative proceedings pursuant to FATA.

## II. The District Court Did Not Err in Concluding Plaintiffs Were Not Entitled to a Percentage of the Funds Recovered as a Result of the OSI Administrative Proceedings

**{11}** Plaintiffs contend the district court erred in concluding they were not entitled under FATA to a percentage of the funds recovered as a result of the OSI administrative proceedings. Plaintiffs also challenge certain factual findings entered by the district court.

**{12}** We review mixed questions of fact and law for substantial evidence to support factual findings and conduct a de novo review of the application of those facts to conclusions of law. *See Ponder v. State Farm Mut. Auto. Ins. Co.*, 2000-NMSC-033, ¶ 7, 129 N.M. 698, 12 P.3d 960. To the extent Plaintiffs' appeal requires us to interpret FATA's provisions, our review is de novo. *See Cates v. Mosher Enters., Inc.*, 2017-NMCA-063, ¶ 14, 403 P.3d 687 ("We review interpretation of statutory provisions de novo."). "We find the cases construing FATA's federal analogue, the False Claims Act [FCA], helpful in understanding the context and purpose of FATA." *State ex rel. Foy v. Austin Cap. Mgmt., Ltd.*, 2015-NMSC-025, ¶ 16, 355 P.3d 1; *see id.* ¶ 25 ("FATA closely tracks the longstanding federal [FCA].").

**{13}** When a private person brings an action under FATA,[2] the AG has the option to "proceed with the action," § 44-9-5(C), or to "decline[] to take over the action." Section 44-9-5(D)(2). If it "proceeds with an action brought by a qui tam plaintiff" and "prevails in the action, the qui tam plaintiff shall," subject to an exception not relevant here, receive a percentage of "the proceeds of the action or settlement." Section 44-9-7(A). The AG

---

2Such a person is referred to as a "qui tam plaintiff." *See* § 44-9-5(A).

may proceed with the qui tam action by intervening in that action. *See* § 44-9-5(C). In addition, "the [AG] . . . may elect to pursue the state's or political subdivision's claim through any alternate remedy available, including an administrative proceeding." Section 44-9-6(H).

**{14}** Here, the AG proceeded with Plaintiffs' qui tam action in two parts. First, the AG intervened in Plaintiffs' qui tam action, adding PIC and PNC as defendants. This action resulted in the Settlement Agreement, which settled certain claims brought by Plaintiffs. Second, the AG delegated pursuit of the "remaining claims" in Plaintiffs' qui tam action to OSI, to be pursued through existing OSI administrative proceedings. The AG and Plaintiffs agreed to deem these OSI administrative proceedings an "alternate remedy," pursuant to Section 44-9-6(H).

**{15}** Because the AG proceeded with the remaining claims brought in Plaintiffs' qui tam action through an alternate remedy pursuant to Section 44-9-6(H), Plaintiffs have a right to receive a percentage of "the proceeds of the action or settlement." *See* § 44-9-7(A); *United States v. Wegeler*, 941 F.3d 665, 672-73 (3d Cir. 2019) (noting that when the government pursues an alternate remedy under the FCA, a qui tam plaintiff has a right to a percentage of the proceeds of the action). The OSI administrative proceedings ultimately resulted in a recovery of $15,594,169 based on an audit's findings that PHP and PIC improperly applied MIP credits. We must therefore determine whether these funds qualify as "proceeds of the action or settlement," such that Plaintiffs are entitled to receive a percentage. *See* § 44-9-7(A).

**{16}** Plaintiffs contend that because the AG proceeded with the remaining claims in their qui tam action through an alternate remedy, they are automatically entitled to a percentage of any resulting proceeds. We conclude that FATA's language requires a different result. *See Stennis v. City of Santa Fe*, 2010-NMCA-108, ¶ 10, 149 N.M. 92, 244 P.3d 787 ("Our courts have repeatedly observed that a statute's plain language is the most reliable indicator of legislative intent.").

**{17}** As discussed, when the State "proceeds with an action *brought by a qui tam plaintiff*," a qui tam plaintiff is entitled to a percentage "of the proceeds of the action or settlement." Section 44-9-7(A) (emphasis added). The proceeds to which a qui tam plaintiff is entitled, then, are limited to proceeds from the action as "brought by" the qui tam plaintiff. *See id.* In other words, a qui tam plaintiff's ability to recover is limited to the action as brought in the qui tam suit and cannot encompass more. The language of Section 44-9-6(H) bolsters this construction. It provides that if the State "elect[s] to pursue [its] *claim* through [an] alternate remedy. . . . the qui tam plaintiff shall have the same rights in such a proceeding as the qui tam plaintiff would have had if the action had continued pursuant to this section." Section 44-9-6(H) (emphasis added). We read this to mean that the State's claim is limited to the one that otherwise could have been prosecuted through the qui tam action. In sum, a qui tam plaintiff "has a right to recover a share of the proceeds of the alternate remedy to the same degree that he or she would have been entitled to a share of the proceeds" of the claims as brought in the qui tam action. *Rille v. PricewaterhouseCoopers LLP*, 803 F.3d 368, 373 (8th Cir. 2015)

(internal quotation marks and citation omitted). Therefore, the narrow question before us is whether the $15,594,169 recovered as a result of the OSI administrative proceedings qualifies as proceeds of a claim brought by Plaintiffs in their qui tam action. Based on the district court's factual findings, we conclude these funds were not proceeds of a claim brought by Plaintiffs.

**{18}** The district court found that the $15,594,169 recovered as a result of the OSI administrative proceedings was based on PHP and PIC's improper application of MIP credits, but that Plaintiff's qui tam action did not include a claim relating to MIP credits.

**{19}** Plaintiffs, however, contend that the standard for determining whether the $15,594,169 in recovered funds qualifies as proceeds of a claim brought in their qui tam action is whether the conduct upon which the OSI recovery is based overlaps with the conduct alleged in their qui tam complaint. *Cf. Rille*, 803 F.3d at 373-74 ("[P]roceeds of 'the claim' must extend to proceeds of a [government] settlement in which the conduct contemplated in the settlement agreement overlaps with the conduct alleged in the [qui tam plaintiff's] complaint. Otherwise, the government could deprive the [qui tam plaintiff] of his [or her] right to recover simply by recasting the same or similar factual allegations in a new claim." (alterations, omission, internal quotations marks, and citation omitted)). Assuming without deciding Plaintiffs are correct as to the applicable standard, this standard has still not been met. The district court found on remand that "[t]here was no overlap" between Plaintiffs' qui tam suit and the OSI administrative proceedings with respect to MIP credits.

**{20}** Plaintiffs challenge the district court's factual finding that their qui tam action did not include a claim relating to MIP credits. They argue the district court "ignored substantial and uncontroverted evidence of the inclusion of MIP credits in . . . [Plaintiffs' qui tam suit], including the pleadings, [Plaintiffs'] disclosures to the []AG, and the substantial contributions [made by Plaintiffs] to the [OSI a]dministrative [p]roceedings." Plaintiffs also contend there was overlap between their qui tam suit and the recovery resulting from the OSI administrative proceedings related to MIP credits, and that the AG admitted as much.

**{21}** To the extent Plaintiffs challenge the district court's finding that their qui tam suit did not include a claim relating to MIP credits, their brief in chief discusses only those aspects of the record which tend to support their position, and therefore does not include a summary of the "substance of the evidence bearing on the proposition" required by Rule 12-318(A)(3) NMRA. *See Maloof v. San Juan Cnty. Valuation Protests Bd.*, 1992-NMCA-127, ¶ 18, 114 N.M. 755, 845 P.2d 849 ("Rule [12-318(A)(3)] imposes a duty upon an appellant, who seeks to challenge findings adopted below, to marshal all of the evidence *in support* of the finding[] and then demonstrate that even if the evidence is viewed in a light most favorable to the decision reached below, together with all reasonable inferences attendant thereto, the evidence is insufficient to support the finding[]." (emphasis added)). We therefore decline to address this factual challenge.

**{22}** As to the district court's finding on remand that "[t]here was no overlap" between Plaintiffs' qui tam suit and the OSI administrative proceedings with respect to MIP credits, we conclude this factual finding is supported by substantial evidence. Plaintiffs do not dispute that neither the phrase "Medical Insurance Pool" nor the acronym "MIP" appears in Plaintiffs' amended qui tam complaint. These terms likewise do not appear in the AG's complaint in intervention, which was intended to "incorporate[] all of [the qui tam Plaintiffs'] claims." More importantly, the assistant AG charged with investigating the allegations in Plaintiffs' qui tam suit reviewed documents related to the suit, communicated with OSI, interviewed individuals related to Plaintiffs' allegations, and met with Plaintiffs. He testified that in his discussions with Plaintiffs and their counsel, he could not recall them ever having raised a FATA violation relating to MIP credits; the issues raised in Plaintiffs' qui tam complaints and the AG's complaint in intervention did not overlap with the OSI administrative proceeding with respect to any issues related to MIP credits; and that a day before he negotiated with Plaintiffs and their counsel about Plaintiffs' share in the Settlement Agreement recovery, he received a communication from Plaintiffs' counsel indicating that "MIP payments" were not included in Plaintiffs' qui tam complaint. In light of this evidence supporting the district court's factual findings, we conclude that the funds recovered as a result of the OSI administrative proceedings based on an audit finding that PHP and PIC had improperly applied MIP credits did not qualify as proceeds of a claim brought by Plaintiffs. *See Mayeux v. Winder*, 2006-NMCA-028, ¶ 11, 139 N.M. 235, 131 P.3d 85 (recognizing that on review of the district court's factual findings, the presence of evidence supporting the opposite result is not relevant).

**{23}** Plaintiffs nonetheless argue that their efforts—in filing a complaint that provided the government sufficient information to pursue an investigation into the allegedly fraudulent practices, providing the AG with voluminous documentation, and cooperating with and facilitating the audit and settlement—allowed the State to enjoy a significant recovery that would not have happened but for Plaintiffs' qui tam action. Plaintiffs contend that denying them a share of the recovery arising out of the OSI administrative proceedings would have a chilling effect on whistleblowers and create mistrust between the government and bona fide qui tam plaintiffs, thereby undermining a primary purpose of FATA.

**{24}** Insofar as Plaintiffs argue they were catalysts for the State's recovery, the Eighth Circuit has criticized such a catalyst theory as a basis for recovery, stating,

> The statute allows [qui tam plaintiffs] to recover a percentage of the proceeds of the settlement of "the claim" brought by the [qui tam plaintiffs], and only that claim. . . . Recovery under [the FCA], however, does not extend to proceeds of the settlement of such "additional claims," whether or not they are causally connected to the claim brought by the relators. The [FCA] does not provide for an award to [qui tam plaintiffs] from the proceeds of settlements that 'resulted from' the claim or were "caused by" the claim.

*Rille*, 803 F.3d at 374.

**{25}** Although the State pursued Plaintiffs' remaining qui tam claims through an alternate remedy in the OSI administrative proceedings, we see no reason why the ultimate recovery arising from those proceedings—which was based on the findings of an ongoing audit—could not result from a claim different than those brought by Plaintiffs. If we were to conclude otherwise, qui tam plaintiffs would automatically be entitled to a percentage of *any* proceeds arising out of an alternate remedy, even when those proceeds were based on a claim not brought by the qui tam plaintiffs but instead were based on information exposed during the course of an investigation conducted pursuant to the alternate remedy proceeding. Such a position would be inconsistent with the legislative intent of FATA, which seeks to "prohibit 'parasitic' qui tam plaintiffs while also providing an incentive for meritorious qui tam plaintiffs to pursue their claims." *See Foy*, 2015-NMSC-025, ¶¶ 16-17.

**{26}** For these reasons, we conclude Plaintiffs were not entitled to a percentage of the funds recovered as a result of the OSI administrative proceedings. Accordingly, the district court did not err in dismissing with prejudice Plaintiffs' complaint for declaratory judgment.

**CONCLUSION**

**{27}** For the foregoing reasons, we affirm.

**{28}** **IT IS SO ORDERED.**

**KRISTINA BOGARDUS, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Chief Judge**

**SHAMMARA H. HENDERSON, Judge, concurring in part and dissenting in part**

**HENDERSON, Judge (concurring in part and dissenting in part).**

**{29}** Respectfully, I concur in part and dissent in part. I agree with the majority that the AG agreement does not entitle Plaintiffs to 20 percent of the funds recovered as a result of the OSI administrative proceedings. Where I part company from the majority is in the decision not to address the district court's reliance on federal FCA authority from the United States Court of Appeals for the Sixth Circuit, *United States ex rel. Bledsoe v. Community Health Systems, Inc.*, 501 F.3d 493 (6th Cir. 2007), in concluding that Plaintiffs were not entitled to a percentage of the funds recovered as a result of the OSI administrative proceedings. I believe this was a missed opportunity, and a better course of action would have been to clarify the law in this area and remand to the district court to make findings and conclusions consistent with our opinion.

**{30}** The district court concluded that Plaintiffs are barred from further recovery because their qui tam action was not pled with sufficient particularity. OSI contends that because MIP credits were not mentioned by name in Plaintiffs' qui tam complaint, but MIP credits were included in the ER Report that formed the basis for the recovery resulting from the OSI administrative proceedings, Plaintiffs are not entitled to share in that recovery. In doing so, OSI encourages this Court to adopt *Bledsoe* and its application relied upon by the district court.

**{31}** *Bledsoe* states that an action alleging FCA violations must be pled "with particularity" to be consistent with the Federal Rule of Civil Procedure 9(b). *Bledsoe*, 501 F.3d at 504. I recognize the factual and procedural differences in *Bledsoe* from the present case. To start, the qui tam plaintiff in *Bledsoe* was ignorant to the government's existing and distinct investigation into the organization against which he had initiated a qui tam action. *See id.* at 499. Moreover, the government did not pursue intervention in the qui tam action in *Bledsoe*, electing only to pursue settlement negotiations as an "alternate remedy." *Id.* at 498-500. These particulars notwithstanding, and having considered the function of Rule 1-009(B) NMRA when fraud is pled, I think the better approach is to decline the minority position taken in *Bledsoe* and adopt an approach consistent with those articulated in cases by the majority of the Federal Circuit Courts of Appeal.[3]

**{32}** Indeed, the United States Court of Appeals for the Eighth Circuit expressed concern that an exacting pleading standard at the award stage of an action undermines the FCA's spirit and the incentive for individuals to bring fraud to light. The Eighth Circuit noted that Rule 9(b) functions to test the sufficiency of a fraud complaint at the outset, and warned of the perverse incentive for the government to strip qui tam plaintiffs of earned proceeds by using Rule 9(b) as a shield. The court stated,

> We reject the contention that Rule 9(b) plays a part in determining whether a relator is entitled to share in the settlement proceeds resulting from a qui tam action in which the government elects to intervene. . . . If the government is allowed to contend at the conclusion of a case that a relator's initial allegations were insufficient, even though the government implicitly acknowledged the legal sufficiency of the pleadings by choosing to intervene, the relator no longer has the opportunity to cure the deficiency. We find nothing in the FCA's statutory text to support this type of post hoc use of Rule 9(b) to deny a relator the right to a share of the settlement proceeds in an action in which the government intervenes.

*Roberts v. Accenture, LLP*, 707 F.3d 1011, 1017-18 (8th Cir. 2013); *see also Foglia v. Rental Ventures Mgmt., LLC*, 754 F.3d 153, 156 (3d Cir. 2014) (noting that the FCA's statutory text "does not require that the exact content of the false claims in question be shown"); *cf. Foglia*, 754 F.3d at 156 (noting that "pleading the details of a specific false claim presented to the government is not an indispensable requirement of a viable FCA

---

3 *See* Sara A. Smoter, Note, *Relaxing Rule 9(b): Why False Claims Act Relators Should Be Held to a Flexible Pleading Standard*, 66 Case W. Res. L. Rev. 235 (2015).

complaint" and rejecting a "rigid pleading standard" in FCA cases as "unsupported by Rule 9(b) and undermines the FCA's effectiveness as a tool to combat fraud against the United States" (internal quotation marks and citation omitted)); *United States ex rel. Lemmon v. Envirocare of Utah, Inc.*, 614 F.3d 1163, 1166, 1172-73 (10th Cir. 2010) (holding that a qui tam plaintiff in an FCA case need only plead details of fraud to support "a reasonable inference that false claims were submitted," but need not "provide a factual basis for every allegation"); *Ebeid ex rel. United States v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010) (rejecting the contention that "representative examples" of fraud must be present in FCA pleadings to pass muster under Rule 9(b)); *United States ex rel. Duxbury v. Ortho Biotech Prods., L.P.*, 579 F.3d 13, 29-30 (1st Cir. 2009) (reversing a district court order that utilized a stringent Rule 9(b) standard requiring "relators to provide details that identify particular false claims for payment that were submitted to the government" and embracing a "more flexible standard" (emphasis, internal quotation marks, and citation omitted)); *United States ex rel. Lusby v. Rolls-Royce Corp.*, 570 F.3d 849, 854-55 (7th Cir. 2009) (holding that a qui tam plaintiff in an FCA case did not need specific documents to meet Rule 9(b)'s standard; rather, it is sufficient to "show, in detail, the nature of the charge" because "knowledge is inferential"); *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 190 (5th Cir. 2009) (rejecting a "straitjacket" standard for Rule 9(b) in FCA cases and stating that an FCA complaint "may . . . survive by alleging particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that the claims were actually submitted"); *United States ex rel. Williams v. Martin-Baker Aircraft Co.*, 389 F.3d 1251, 1258-59 (D.C. Cir. 2004) (noting that qui tam plaintiffs may lack access to relevant information in the hands of defendants and holding that "Rule 9(b) does not require plaintiffs to allege every fact pertaining to every instance of fraud when a scheme spans several years").

**{33}**     Consistent with the principles set forth above, I would reverse and remand the judgment in this case, requesting the district court to, again, consider the evidence taken at trial to determine the rights of Plaintiffs, pursuant to their contract with the AG, under Section 44-9-7(A). For these reasons, I respectfully concur in part and dissent in part.

**SHAMMARA H. HENDERSON, Judge**